**Opinion issued December 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00977-CV

_____

**TAJ MOHAMMED, Appellant**

**V.**

**D. 1050 W. RANKIN, INC., Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1034730**

---

## O P I N I O N

In this eviction case, Taj Mohammed appeals the county court's order determining that he had no right to continue to occupy a convenience store property. Mohammed leased the premises from D. 1050 W. Rankin, Inc. The

justice court initially heard the case, ultimately ruling in Mohammed's favor. Rankin appealed to the county court at law, which reversed the justice court ruling. On appeal to this court, Mohammed contends that (1) the justice court that heard the eviction action lacked subject-matter jurisdiction, thus any judgment stemming from the proceeding is void; (2) Rankin did not timely appeal the justice court decision against Rankin to the county court, thus the county court lacked jurisdiction to hear the appeal; and (3) as to the merits, he properly exercised a lease option for an additional term before receiving Rankin's notice to vacate the premises, contrary to the county court's findings. Because the justice and county courts had jurisdiction over the case and the evidence supports the county court's findings in favor of Rankin, we affirm.

## Background

In June 2001, Mohammed entered into a commercial lease with Bryant Management to house his convenience store, Quick Food Mart, in a north Houston shopping center. The lease term was four years and seven months. Soon after, Rankin became Mohammed's landlord when it purchased the shopping center from Bryant. The lease required monthly rental payments of $1,200, steadily increasing to $1,800 per month by the end of the first term.

The lease provided two extension options. The first five–year option contemplated monthly rent of $2,000 for the first two years and $2,200 for the

2

remaining three years. The rent for the second five-year option would be set based on "market rents of similar properties in the location at that time."

At the end of December 2005, the first term of the lease expired. Mohammed continued to pay $1,800 per month in rent and occupied the premises at that monthly rental amount until April 2013, when Rankin notified Mohammed that it was terminating his lease in thirty days. When Mohammed refused to vacate the premises, Rankin pursued his eviction.

*Course of Proceedings*

Rankin brought a forcible detainer suit in justice court seeking to evict Mohammed from the property. In an order dated June 18, 2013, the justice court ruled for Rankin. Mohammed moved for reconsideration in the justice court, arguing that the court had indicated at a hearing that Mohammed had the superior right of possession. On June 27, the justice court modified its judgment, this time finding in favor of Mohammed. Mohammed served Rankin with notice of the June 27 order on July 3. Rankin filed its appeal bond on July 5, by posting it by certified mail to the justice court.

In the county court, Mohammed moved to dismiss the case for want of jurisdiction on the ground that the justice court and the county court lacked subject-matter jurisdiction to decide immediate possession. He also contended that Rankin failed to timely appeal the justice court's second order.

3

The county court denied both motions. Upon trial de novo, it found that Mohammed had failed to exercise either lease option, either verbally or in writing, and was a month-to-month tenant; consequently, it rendered judgment in favor of Rankin.

**Discussion**

## I. Justice Court Jurisdiction

The only issue in a forcible detainer action is the right to immediate possession of real property. *Morris v. Am. Home Mortg. Serv., Inc.*, 360 S.W.3d 32, 34 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing TEX. R. CIV. P. 746 (2011, repealed 2013), *and Villalon v. Bank One,* 176 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)). Neither a justice court nor a county court has jurisdiction to determine a right to possession if resolution of that right in turn depends upon the resolution of a title dispute. *Id.* at 34–35 (citing *Mitchell v. Armstrong Capital Corp.,* 911 S.W.2d 169, 171 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). In defining a landlord-tenant relationship, however, a justice court can determine which party has a superior right to immediate possession without impinging on any right granted in the title to the property. *Id.* at 34 (citing *Villalon*, 176 S.W.3d at 71).

Mohammed relies on our court's decision in *Mitchell* to contend that the justice and county courts exceeded their subject-matter jurisdiction by adjudicating

4

whether he had a right to occupy the premises. 911 S.W.2d at 170–71. In *Mitchell*, however, we concluded that the justice and county court lacked jurisdiction because the right to possession in that case depended upon the validity of a foreclosure lien in an underlying title dispute. *Id.* at 171. Here, the question of possession depends upon a landlord-tenant relationship, not on a title dispute. *Mitchell* thus is factually inapposite. As we and other courts have observed, landlord-tenant disputes about possession squarely fall within the justice court's jurisdiction. *See Chinyere v. Wells Fargo Bank, N.A.*, 440 S.W.3d 80, 83–85 (Tex. App.—Houston [1st Dist.] 2012, no pet.).[1]

---

[1] Texas courts have consistently struck this balance. *Id.* at 84–85. *Compare Yarto & DTRJ Invs., L.P. v. Gilliland,* 287 S.W.3d 83, 89–90 (Tex. App.—Corpus Christi 2009, no pet.) (concluding justice court lacked subject-matter jurisdiction in forcible-detainer action in absence of contract between parties, because determining who had a superior right of possession required immediate resolution of title dispute) *and Hopes v. Buckeye Ret. Co., LLC, Ltd.,* No. 13-07-00058-CV, 2009 WL 866794, at *5 (Tex. App.—Corpus Christi, Apr. 2, 2009, no pet.) (mem. op.) ("Without a landlord-tenant relationship or other basis independent of the [contract in dispute], the justice court could not determine the issue of immediate possession without determining ownership of the property."), *with Bruce v. Fed. Nat'l Mortg. Ass'n,* 352 S.W.3d 891, 893–94 (Tex. App.—Dallas 2011, pet. denied) (agreeing that "title determination was not required to determine the right to possession because the landlord-tenant relationship [found within the deed] provided an independent basis for possession" such that justice court had jurisdiction over forcible-detainer claim); *Rice v. Pinney,* 51 S.W.3d 705, 709–10, 712 (Tex. App.—Dallas 2001, no pet.) (holding justice and county courts had jurisdiction in forcible-detainer action because foreclosure pursuant to the deed of trust established a landlord-tenant relationship, which, unlike in *Mitchell,* provided an "independent basis on which the trial court could determine the issue of immediate possession without resolving the issue of title to the property"); *Dormady v. Dinero Land & Cattle Co., L.C.,* 61 S.W.3d 555, 559 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.) (holding justice and county courts had jurisdiction in forcible-detainer action, observing that the situation in *Mitchell* was "not the situation in this case where a landlord-tenant relationship is established in the

The parties here disagree about whether the lease term was month–to–month or instead fell within one of the lease's extension options. In either scenario, possession depends upon their landlord–tenant relationship. We hold that the justice and county courts had subject-matter jurisdiction to determine immediate possession in the forcible detainer suit. *See Chinyere*, 440 S.W.3d at 84–85.

## II.   County Court Appellate Jurisdiction

Mohammed challenges the county court's appellate jurisdiction, arguing that the time for filing an appeal had expired because (1) the time ran from the justice court's first judgment, or alternatively, (2) the time ran from the date the justice court signed the modified judgment. Rankin responds that it timely posted its appeal two days after it received notice of the modified judgment against it.

In resolving this procedural challenge, we first determine the governing rules. On April 15, 2013, the Texas Supreme Court adopted new rules for justice court cases, and it repealed the then-existing rules.[2] The justice court signed its judgment in this case on June 27. The county court appeal of the case remained pending when the new justice court rules became effective on August 31, 2013.

---

original deed of trust . . . provid[ing] a basis for determining the right to immediate possession without resolving the ultimate issue of title to the property.").
[2] *See Miscellaneous Docket No.* 13-9049, TEX. SUPREME COURT (Apr. 15, 2013), http://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscdocket/13/13904900.pdf).

Mohammed observes that Rankin filed its justice court action before the effective date of the new rules and refers us to the now-repealed rules. In its order adopting the new rules, however, the Texas Supreme Court provides that the new rules "govern cases . . . pending on August 31, 2013, except to the extent that in the opinion of the court their application in a case pending on August 31, 2013, would not be feasible or would work injustice, in which event the formerly applicable procedure applies." *Id.* Because this case has remained pending beyond the effective date of the new rules, we cite the newly-adopted rules and note where they are substantively different in matters relevant to the resolution of this appeal.

## A. Modification of the Judgment

In eviction cases, a landlord may appeal a justice court's decision by filing an approved bond with the justice court within five days after the court signs its judgment. TEX. R. CIV. P. 510.9(a) ("A party may appeal a judgment in an eviction case by filing a bond, making a cash deposit, or filing a sworn statement of inability to pay with the justice court within 5 days after the judgment is signed.").

Characterizing the justice court's June 27 judgment as a judgment "nunc pro tunc," Mohammed argues that the time period for filing an appeal to the county court began to run on June 18, when the justice court signed its first judgment. Because Rankin prevailed in the June 18 justice court judgment and lost in the

7

June 27 judgment, however, the justice court's judgment was not a "nunc pro tunc" judgment; it was a modified or amended judgment that changed the prevailing party. *See* TEX. R. CIV. P. 506.1 & 306a; *Lane Bank Equip. Co. v. Smith S. Equip., Inc.* 10 S.W.3d 308, 313 (Tex. 2000). In any event, the appellate timetable restarts even from a judgment nunc pro tunc if the appellate complaint includes a complaint about a matter changed in the later judgment. *Amato v. Hernandez,* 981 S.W.2d 947, 950 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Accordingly, we reject Mohommad's contention that Rankin's time for filing an appeal to the county court began to run as of the June 18 judgment.

The new justice court eviction procedure, contained in Rule 510, does not have a specific provision addressing the timetable for an appeal when the justice court modifies its judgment in an eviction case. Generally, under Rule 506, in a justice court case, a party may appeal within 21 days after the judgment is signed or motion for new tried is denied. TEX. R. CIV. P. 506.1(a). This 21-day period mirrors the timetable for an appeal from an original judgment in a non-eviction justice court case. *See id.*

But the eviction rule's procedure trumps the more general justice court rule when the two conflict. "To the extent of any conflict between Rule 510 [governing evictions] and the rest of Part V [governing justice cases in general], Rule 510 applies." *See* TEX. R. CIV. P. 500.3(d). Because the eviction rule provides for an

8

appellate timetable of 5 days, we conclude that the more general rule allowing 21 days for an appeal in a justice court case does not apply; in harmonizing the provisions so as not to conflict, we conclude that the 5-day timeframe applies to an appeal of an amended justice court judgment, mirroring the timeframe for an appeal from the original judgment. *See id; compare* TEX. R. CIV. P. 506.1 (providing for 21-day period for an appeal after justice court judgment is signed or motion for new tried is denied) *with* TEX. R. CIV. P. 510.9 (providing for 5-day period for an appeal from a judgment in an eviction case, without referring to a timetable for an amended judgment).

## B. Notice of the Justice Court Judgment and Computation of Time

Having determined that the applicable time period for appeal runs from the amended judgment and is 5 days long, we turn to the question of whether a delay in notice of the judgment may extend the timetable for filing an appeal bond. The justice court signed the amended judgment on June 27. Mohammed notified Rankin of the judgment via email on July 3. Rankin posted its appeal bond in the mail on July 5.

Under the new justice court eviction procedure, a party has 5 days to appeal an adverse ruling. *See* TEX. R. CIV. P. 510.9(a). The time period excludes the day that the trial court signed the judgment and includes the last day of the period, but extends the period to the next business day if the last day is a Saturday, Sunday or

legal holiday. *See* TEX. R. CIV. P. 500.5 ("Computation of Time; Timely Filing) & 510.2 (applying Rule 500.5 to eviction cases but authorizing justice court action if the document is filed by mail but not received by the justice court). The now-repealed forcible entry and detainer court rule had the same 5-day appellate timetable for appeals from eviction cases but did not have a provision for computation of time. *See* TEX. R. CIV. P. 749 (repealed 2013). Under the Rules of Civil Procedure in general, however, Saturdays, Sundays, and legal holidays are not included at all for any time period of 5 days or less. *See* TEX. R. CIV. P. 4. Thus, if the time period began to run on June 27, the time for filing an appeal expired on July 2 (under the new justice court eviction rules) or on July 3 (under the then-applicable justice court rules and the Texas Rules of Civil Procedure).

Mohammed does not contest, however, that neither he nor the justice court notified Rankin of the amended judgment until July 3, when Mohammed's counsel emailed it to Rankin's counsel shortly before 5 p.m, thereby effectively precluding a timely appeal from the judgment. He also does not contest that neither he nor the justice court notified Rankin of any hearing on his motion to modify the judgment; the justice court record contains no notice of a hearing. Based on these facts, Rankin responds that the county court properly found its appeal to be timely filed, and that to dismiss the appeal for lack of jurisdiction would have violated Rankin's due process rights. We agree. Although the time for filing an appeal from an

eviction is short, the justice court rules presume as a fundamental matter of due process that the affected party had notice of the hearing and the judgment against it in time to perfect an appeal. *See* TEX. R. CIV. P. 501.4(e) ("A party may offer evidence or testimony that a notice or document was not received, or, if service was by mail, that it was not received within 3 days from the date of mailing, and upon so finding, the court may extend the time for taking the action required of the party or grant other relief as it deems just.").

In the county court, Rankin proffered its counsel's verified response to Mohammad's motion to dismiss the appeal from the justice court, in which counsel averred that Rankin did not receive notice of the justice court's amended judgment until July 3. Rankin included as exhibits the justice court motion for a judgment "nunc pro tunc," a notice of hearing that did not contain a hearing date, and July 3 correspondence between Rankin and Mohammed's counsel indicating that Mohammed did not serve a copy of the amended judgment until that day.

Mohammed countered in the county court that Rankin had effective notice of the June 27 amended judgment because it accurately reflected the justice court's intended ruling. Given that the justice court signed an order in favor of Rankin, however, any intimation made at the hearing was not effective notice of an amendment to the judgment. Mohammed did not challenge the veracity of Rankin's counsel's sworn statement that neither he nor Rankin was apprised of a

11

hearing to modify the judgment nor served with a copy of the modified judgment until the time for appeal had all but passed. We hold that the county court properly denied Mohammed's motion to dismiss the justice court appeal by impliedly finding that Rankin did not receive notice of the judgment against it until July 3, thereby extending the time for perfecting the appeal.

Finally, Mohammed argues that Rankin posted its bond too late, even if the time period for filing an appeal began on July 3, because the justice court did not receive Rankin's certified letter containing the appeal bond until July 9, more than 5 days after Rankin received notice of the judgment. However, a filing is timely if mailed by the last day for filing and received within 10 days, under either the then-existing rules (which left computation of time to the general rules of civil procedure) or the new justice court rules. *See* TEX. R. CIV. P. 500.5(b) ("Any document required to be filed by a given date is considered timely if deposited in the U.S. mail on or before that date, and received within 10 days of the due date.") & TEX. R. CIV. P. 5.

Under the computation of time under either set of rules, we hold that Rankin timely filed its appeal bond. Accordingly, the county court had appellate jurisdiction over the case.

## III.  Interpretation of the Lease Agreement

The county court held a bench trial on the merits of the parties' dispute.  It submitted findings of fact and conclusions of law.  Among them, the county court found that Mohammed did not exercise any renewal option under the lease agreement.  It concluded that Mohammed was a month-to-month tenant who breached the lease agreement when he refused to vacate the premises upon notice of the expiration of the lease.  Mohammed challenges these findings and conclusions, arguing that he rightfully possesses the leased premises pursuant to either of the two options to extend the lease contained in the lease agreement.

### A.  Standard of Review

In an appeal from a bench trial, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony.  *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  If the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In a legal-sufficiency review, we view the evidence in the light most favorable to the fact-finding, crediting favorable evidence if a reasonable fact-finder could do so, and disregarding contrary evidence unless a reasonable fact-finder could not. *See id.* at 827. In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review de novo a trial court's conclusions of law. *Merry Homes, Inc. v. Chi Hung Luu,* 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We uphold a conclusion of law if the judgment can be sustained on any legal theory supported by the evidence. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 769 (Tex. App.—Corpus Christi 2001, no pet.).

**B.    Applicable Law**

We review a trial court's construction of an unambiguous contract de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex. 1999). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). We consider the entire

writing in order to harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless. *Id.* Contract terms will be given their plain, ordinary, and generally accepted meanings, unless the contract indicates a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005).

A party to an option contract may enforce that option by strict compliance with the terms of the option. *See Zeidman v. Davis*, 342 S.W.2d 555, 558 (Tex. 1961). "[A] failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Crown Constr. Co., Inc. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.—San Antonio 1997, no pet.)). Under the statute of frauds, material modifications to a lease agreement must be in writing and signed by the party against whom the modification is to be enforced. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5) (West 2014); *Lawrence v. Reyna Realty Group*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) (citing *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 21 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (finding that written agreement

15

would have to exist for party to be obligated to pay relocation expenses in exchange for early surrender of lease).

The Texas Property Code provides that "[a] person who refuses to surrender possession of real property on demand commits a forcible detainer if the person . . . is a tenant at will or by sufferance." TEX. PROP. CODE ANN. §24.002 (West 2014) (numerals omitted). A tenant who occupies leased property after termination of its lease is a "holdover tenant." *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 915 (Tex. 2013). A holdover tenant's rights differ depending on whether the tenant becomes a "tenant at will" or a "tenant at sufferance." *Id.* The Texas Supreme Court has described a tenant at will as a holdover tenant who "holds possession with the landlord's consent but without fixed terms (as to duration or rent)." *Id.* (quoting BLACK'S LAW DICTIONARY 1604 (9th ed. 2009)). A tenant at sufferance is "[a] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired." *Id.* (quoting BLACK'S LAW DICTIONARY 1605 (9th ed. 2009)).

Tenants at will have lawful possession, but without a fixed term, and the landlord can deny possession at any time. *Id.* (citing *Robb v. San Antonio St. Ry.*, 18 S.W. 707, 708 (Tex. 1891)). If the tenant remains in possession and continues to pay rent with the landlord's consent, the terms of the prior lease will continue to govern the new arrangement absent an agreement to the contrary. *Id.* at 916 (citing

16

*Carrasco v. Stewart,* 224 S.W.3d 363, 368 (Tex. App.—El Paso 2006, no pet.) *and*

*Barragan v. Munoz,* 525 S.W.2d 559, 561–62 (Tex. Civ. App.—El Paso 1975, no

writ)).

## C. Analysis

The county court found that the parties never exercised either renewal option

in accord with their lease agreement. The lease sets forth the option terms:

> There are two five (5) year options. The first five year option is set at
> $2,000.00 (monthly) for the first two of the five years and $2,200.00
> (monthly) for the remaining three years. The rate for the last renewal
> will be determined by the market rents of similar properties in the
> location at that time.

Mohammed continued to pay rent at a rate of $1,800 a month after the initial lease

term ended in December 2005. Though Mohammed argued that he had provided

written notice to Rankin to exercise both options, Rankin disputed that it ever

received notice, and neither party asserted that a signed writing by both parties

acknowledged the exercise of either option at $1,800 a month. Because the rental

amount that Mohammed paid varied from that required in the first option, and the

second required mutual agreement to the rent amount upon its exercise, proper

execution of either option would require a signed writing memorializing the rental

amount. *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(5); *Lawrence*, 434 S.W.3d

at 673; *see also Columbia/HCA,* 8 S.W.3d 18 at 21. The lease provides that it

"may not be altered, waived, amended or extended except by an instrument in

17

writing signed by landlord and tenant." Because the parties never agreed in writing to modify the rent amount—in particular to adjust the rent owed—Mohammed never properly exercised either option to renew. *See id.*

Mohammed responds that the lease's severability clause preserves his ability to exercise his lease options despite the difference in rental payments. The severability clause in the lease provides: "If any provision of this Lease . . . shall be invalid or unenforceable to any extent, the remainder of this Lease and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law. . . ." The severability clause is inapplicable in these circumstances. Mohammed does not identify any lease agreement that is invalid or unenforceable. No renewal of the lease ever transpired because Mohammed did not exercise either option in compliance with the required rental payments, and the parties never agreed to modify the option terms. *See Comeaux*, 93 S.W.3d at 220.

Mohammed continued his business on the property after the lease term expired in December 2005. Rankin continued to accept rent. Because Rankin consented to the holdover, Mohammed became a month-to-month tenant under the lease agreement. As such, he was a tenant at will until Rankin notified him to vacate the premises. *See Coinmach*, 417 S.W.3d at 915–16. Based on the

18

evidence presented, the county court properly found that Mohammed did not exercise either lease option.

## Conclusion

We hold that the justice and county courts had subject-matter jurisdiction to decide this forcible detainer action. We further hold that Rankin timely appealed from the justice court's judgment to the county court at law. We find no error in the county court's finding that Mohammed did not exercise an option to extend his lease, or in its conclusion that Mohammed was required to vacate the leased premises. We therefore affirm the judgment of the county court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.