# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00556-CV

Texan Pearl, LLC, Appellant

v.

Victoria Koegel, Joseph W. Koegel, Sarah Evans, and Thomas Evans, Appellees

FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY
NO. C-1-CV-13-001208, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal following a bench trial, Texan Pearl, LLC raises three issues, challenging the county court's judgment in favor of Victoria Koegel and Sarah Evans, who leased an apartment from Texan Pearl, and their fathers, Joseph W. Koegel and Thomas Evans, who guaranteed the lease at issue.[1]  The county court concluded that Texan Pearl retained Sarah's and Victoria's security deposits in bad faith and converted personal property belonging to Victoria.  For the following reasons, we affirm the county court's judgment.

## BACKGROUND

Victoria and Sarah leased an apartment from Texan Pearl in Austin with two other women who are not parties to this lawsuit.  Texan Pearl was managed by the property management

_____

[1]  Because the individual parties share the same last names, we refer to them by their first names.

company, Ely Properties, and Matthew (Matt) Ely was Texan Pearl's property manager and leasing agent. In February 2011, Victoria and Sarah signed the lease, which was for the term of August 8, 2011, to July 31, 2012. Thomas and Joseph guaranteed their daughters' obligations in the lease, and Victoria and Sarah each paid a security deposit of $250. Although the reasons for doing so were disputed at trial, Sarah and Victoria signed a lease for an apartment with Texan Shoal Creek for the time period of January 13, 2012, to July 31, 2012, through the same management company, Ely Properties. Matt Ely's brother, Mitch Ely, was a member of the company that owned both Texan Pearl and Texan Shoal Creek.

Sarah and Victoria paid rent through the end of January 2012 for the Texan Pearl apartment, but they moved out of that apartment and into the Shoal Creek apartment around January 13, 2012, and began paying rent for that apartment. At that time, Victoria did not turn in her keys for the Texan Pearl apartment and left some personal property in the apartment. When she returned to pick up her property before the end of January, she discovered that the locks to the apartment had been changed and her property was no longer there. According to Matt Ely, a cleaning crew "got rid of" any property left in the apartment after the tenants moved out.

Texan Pearl did not return the security deposits of Sarah and Victoria. Matt Ely emailed a "final accounting" for each tenant on March 7, 2012, and a "revised final accounting" on March 28, 2012. The "revised final accounting" reflected a balance owed by each tenant based on the amount of rent owed for the remainder of the lease and charges for carpet cleaning and replacement, painting, maid service, and a re-letting fee, offset by a "rent credit" from new tenants.

Ely Properties secured two tenants for the Texan Pearl apartment at the end of February 2012, and it later secured another tenant at the beginning of April 2012.

Appellees did not make additional payments on the lease, and Texan Pearl sued appellees in justice court for breach of the lease. Appellees counterclaimed, and the case was tried to the justice court. After the justice court entered a take nothing judgment on the parties' claims, Texan Pearl appealed to the county court, seeking to recover contractual damages, including accelerated rent after credits, re-letting fees, attorney's fees, and costs of repairs to the apartment "beyond normal wear and tear." Appellees answered and counterclaimed for damages based on Texan Pearl's alleged violations of the Property Code, including its failure to return the security deposits. *See* Tex. Prop. Code § 92.109 (addressing liability of landlord). Victoria also sought damages for the conversion of her personal property that remained in the Texan Pearl apartment after January 13, 2012.

The case was tried to the bench. The witnesses included Matt Ely, Thomas, Joseph, and Victoria, and the exhibits included the leases, photographs of the apartment and Victoria's personal property, and correspondence between the parties. Texan Pearl's version of events was that Sarah and Victoria agreed to vacate the Texan Pearl apartment in lieu of eviction and that they were responsible for the remainder of rent owed on the lease offset by rent payments made by the new tenants. Texan Pearl also contended that appellees were responsible for their share of repair and cleaning costs to the apartment because the damage to the apartment was beyond normal wear and tear. Appellees' position was that the move between apartments was triggered by conflict among the roommates, that the parties agreed to replace the Texan Pearl lease with the Shoal Creek lease

3

for the remainder of the term of the Texan Pearl lease, that Texan Pearl acted in bad faith when it did not return the security deposits, *see id*. § 92.103(a) (generally obligating landlord to refund security deposit within 30 days), and that Texan Pearl converted Victoria's personal property.

Based on its conclusion that Texan Pearl withheld the security deposits in bad faith, the county court rendered judgment awarding statutory damages to Sarah in the amount of $850 and to Victoria in the amount of $850, along with the amount of $1,200 for the conversion of her personal property. *See id.* § 92.109(a) (authorizing award of "amount equal to the sum of $100, [and] three times the portion of the deposit wrongfully withheld" against "landlord who in bad faith retains a security deposit in violation of this subchapter"). The trial court also entered findings of fact and conclusions of law. Among its findings of fact, the county court found:

- Matthew Ely acted as agent for Texan Pearl, LLC in negotiating the move to another property owned by another corporation (Shoal Creek) which corporation was owned, at least in part, by his brother Mitch Ely.

- In executing a new lease for the new apartment at the Shoal Creek property, Matthew Ely was acting as agent, at least apparently, for both Shoal Creek and for Texan Pearl.

- Ownership of Texan Pearl and Shoal Creek (through Mitch Ely) was aware and approved the replacement of the Texan Pearl lease with the lease at Shoal Creek.

The county court's conclusions of law included that the lease at Shoal Creek "operated as a cancellation of the lease at Texan Pearl" and "operated as a writing to terminate and replace the lease at Texan Pearl" and that "Matthew Ely as agent or apparent agent for Texan Pearl had express

4

authority to modify the terms and/or replace the lease at Texan Pearl under the terms of the contract."

This appeal followed.

## ANALYSIS

**Standard of Review**

A trial court's findings of fact are subject to review for legal and factual sufficiency of the evidence by the same standards applied to a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *see City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005) (describing review of evidence under legal and factual sufficiency standards of review). Appellate courts "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 807. We review a trial court's conclusions of law de novo and will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

**Theories of Ruling**

In its first issue, Texan Pearl argues that the county court erred in rendering judgment against Texan Pearl "because the theories on which it based its ruling were precluded as a matter of law." Texan Pearl argues that the county court based its ruling on improper theories because there was no written evidence to satisfy the statute of frauds or to support a finding of the mutual assent necessary for either release, modification, or novation of the lease. *See* Tex. Bus. & Com. Code § 26.01 (listing promises and agreements that must be in writing); *White v. Harrison*,

390 S.W.3d 666, 674–75 (Tex. App.—Dallas 2012, no pet.) (discussing statute of frauds and modification, release, and novation of lease); *see also Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641–42 (Tex. 2013) (discussing statute of frauds). On this basis, Texan Pearl challenges the county court's conclusions that the "lease at Shoal Creek operated as a cancellation of the lease at Texan Pearl" and "as a writing to terminate and replace the lease at Texan Pearl." It argues that there was no written evidence to support a finding that the Shoal Creek lease operated as a replacement lease because the Shoal Creek lease was between appellees and a separate entity and the statute of frauds prevents oral agreements that materially alter the terms of that lease. To support its position, Texan Pearl relies on section 26.01(b)(6) of the Business and Commerce Code because the lease was signed in February 2011 and the term of the lease ended in July 2012. *See* Tex. Bus. & Com. Code § 26.01(b)(6) (placing "agreement which is not to be performed within one year from the date of making the agreement" within purview of statute of frauds).

To preserve its arguments based on the statute of frauds, however, Texan Pearl was required to raise these arguments with the county court. *See South Plains Lamesa R.R., Ltd. v. Kitten Family Living Trust*, No. 07-09-0343-CV, 2011 Tex. App. LEXIS 7300, at *34–35 (Tex. App.—Amarillo Sept. 6, 2011, no pet.) (mem. op.) (concluding party waived its right to assert statute of frauds on appeal when it failed to object on that ground to evidence of oral agreement); *Maxey Village, Ltd. v. Web Serv. Co.*, No. 14-00-00908-CV, 2001 Tex. App. LEXIS 8443, at *2–3 (Tex. App.—Houston [14th Dist.] Dec. 20, 2001, no pet.) (mem. op., not designated for publication) (concluding that party waived statute of frauds argument because party failed to object to evidence on that basis); *see also* Tex. R. App. P. 33.1 (addressing preservation for appellate review); Tex. R.

6

Civ. P. 94 (listing statute of frauds as affirmative defense); *Bohls v. Brazelton*, 336 S.W.2d 208, 211 (Tex. Civ. App.—Austin 1960, writ ref'd n.r.e.) (noting that party waives statute of frauds if party fails to timely object on this basis to evidence of agreement that allegedly violates statute of frauds). It failed to do so.

At trial, the Shoal Creek lease was admitted as an exhibit, and Joseph testified at trial, "The Shoal Creek lease is the written replacement of the Texan Pearl lease." He also testified that he spoke to Matt Ely about replacing that lease for the Texan Pearl lease in "exactly those terms" and that he "wasn't going to be on the hook for two leases." He further testified that "Mr. Ely clearly spoke to me in terms of moving my daughter from one property that he controlled to another property that he controlled" as a solution to the situation of the roommates' conflict. Consistent with Joseph's testimony, other evidence showed that Matt Ely was acting as the agent for both properties. Matt Ely did not require rental applications for the Shoal Creek apartment, conduct a move-out inspection, or inform appellees that they were delinquent in paying their rent when they did not pay rent on February 1 or March 1 for the Texan Pearl apartment. Matt Ely also answered, "Correct" when asked by the county court if he was "the management and the sole leasing agent for those two properties," and admitted that his brother Mitch was a member of the company that owned both properties and that the owners were aware and authorized Sarah and Victoria's move from the Texan Pearl apartment to the Shoal Creek apartment. Texan Pearl did not object to this evidence

7

or any other evidence based on the statute of frauds. Consequently, Texan Pearl waived its statute of frauds arguments.[2]

Further, even if Texan Pearl had preserved its statute of frauds argument, we would not find it persuasive. Because the lease's term—August 8, 2011, to July 31, 2012—was for less than one year, it was not subject to the statute of frauds. *See* Tex. Bus. & Com. Code § 26.01(b)(5) (placing "lease of real estate for a term longer than one year" within purview of statute of frauds); *see, e.g.*, *Mohammed v. D. 1050 W. Rankin, Inc.*, 464 S.W.3d 737, 745 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing section 26.01(b)(5) in determining if modification to multi-year lease agreement subject to statute of frauds); *Pettigrew v. Reeves*, No. 05-12-00455-CV, 2014 WL 6546980, at *2–3 n.1 (Tex. App.—Dallas Oct. 22, 2014, no pet.) (mem. op.) (holding that section 26.01(b)(6) was "inapplicable" to one-year lease agreement and "any corresponding agreement to share the rent"); *Rymes v. Caribbean Cowboy, LLC*, No. 04-12-00032-CV, 2013 WL 363405, at *3 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (mem. op.) (applying section 26.01(b)(5) and concluding real estate leases with terms for "life of tenants" were not subject to statute of frauds); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000) (describing "traditional statutory construction principle that the more specific statute controls over the more general").

---

[2] Texan Pearl also focuses on a provision in its lease that required modifications to be in writing, but the Shoal Creek lease was in writing. As stated above, Matt Ely testified that his brother Mitch, who was a member of the company that owned both properties, approved Sarah's and Victoria's move from the Texan Pearl apartment to the Shoal Creek apartment. The Shoal Creek apartment was vacant at the time, and Sarah's and Victoria's rent for the Shoal Creek apartment was higher than it had been for the Texan Pearl apartment.

For these reasons, we overrule Texan Pearl's first issue.[3]

**Findings of Bad Faith Retention of Security Deposits**

In its second issue, Texan Pearl argues that the county court erred by finding bad faith retention of the security deposits. Texan Pearl argues that: (i) as a matter of law, no accounting was due under section 92.109 of the Property Code, (ii) any statutory presumption of bad faith was rebutted by the great weight and preponderance of the evidence that established Texan Pearl's good faith, and (iii) the great weight and preponderance of the evidence demonstrated that the deductions made to the security deposit were reasonable. As part of this issue, Texan Pearl also challenges the county court's finding of fact that "No accounting was ever sent to tenants for their security deposits of $250 each." Texan Pearl presented evidence that it sent an "accounting" to appellees on March 7, 2012, and a revised one a few weeks later.

For purposes of this appeal, the Property Code requires a landlord to "refund a security deposit to the tenant on or before the 30th day after the date the tenant surrenders the premises." Tex. Prop. Code § 92.103(b). "Before returning a security deposit, the landlord may

_____

[3] In a separate section of its brief, although not raised by issue, Texan Pearl urges that the county court erred in failing to award contractual damages to Texan Pearl. Texan Pearl urges that it is entitled to damages for re-letting fees, accelerated rent, and attorney's fees because Sarah and Victoria breached the lease. This argument is premised primarily on Texan Pearl's contention that the trial court erred by considering extrinsic evidence that the parties agreed to cancel the lease and replace it with the Shoal Creek lease. As stated above, Texan Pearl has not preserved this argument. Texan Pearl also focuses on evidence that an unauthorized dog was brought into the apartment and one of the other roommates put graffiti on a wall in a common area of the apartment building. Even if the county court found this evidence credible, however, the county court could have found based on the evidence that Texan Pearl was not damaged by the dog or the graffiti. *See Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied) (listing damages as element of breach of contract claim).

9

deduct from the deposit damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease," but the "landlord may not retain any portion of a security deposit to cover normal wear and tear." *Id*. § 92.104(a), (b). If the landlord retains all of the security deposit, as is the case here, the landlord is required to provide a "written description and itemized list of all deductions" unless the "tenant owes rent when he surrenders possession of the premises" and "there is no controversy concerning the amount of rent owed." *Id*. § 92.104(c). "A landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith." *Id.* § 92.109(d); *see id.* § 92.109(a), (b) (listing available statutory damages when landlord acts in bad faith); *Grace v. Thompson*, No. 03-12-00729-CV, 2014 WL 3055958, at *3 (Tex. App.—Austin July 3, 2014, pet. denied) (mem. op.) (noting that "landlord acts in bad faith when she acts in disregard of the tenant's rights and with the intention of depriving the tenant of a refund lawfully due").

According to Texan Pearl, it was not obligated to return the security deposits or provide a list of deductions because there was a balance owed for accelerated rents when Sarah and Victoria vacated the apartment and "there [was] no controversy concerning the amount of rent owed" "until after the first accounting was sent." *See* Tex. Prop. Code § 92.104(c). But a central dispute between the parties that resulted in this case was whether Sarah and Victoria owed rent on the lease after January 2012. Thus, because there was a controversy concerning the amount of rent owed, section 92.104(c) does not support Texan Pearl's position. *See id.* Because Texan Pearl did not return the security deposits and did not timely provide a list of deductions within the statutory period,

10

the county court correctly presumed that Texan Pearl acted in bad faith. *See id*. § 92.109(d). Thus, it was Texan Pearl's burden to present evidence to defeat this presumption, i.e. that it acted in good faith. *See Pulley v. Milberger*, 198 S.W.3d 418, 428 (Tex. App.—Dallas 2006, pet. denied) ("To defeat the presumption of bad faith, the landlord must prove his good faith, i.e., honesty in fact in the conduct or transaction concerned."); *see also* Tex. Prop. Code § 92.109(c) (placing burden on landlord to prove that retention of any portion of security deposit was reasonable).

Texan Pearl offered evidence that it provided a list of charges, which included carpet cleaning and replacement, painting, and maid services, that exceeded the amount of the security deposits and were for damages beyond normal wear and tear. *See* Tex. Prop. Code § 92.104(a), (b); *see also id.* § 92.001(4) (defining "normal wear and tear"). Texan Pearl's evidence included Matt Ely's testimony, the accountings, and photographs of the apartment. The county court, however, could have found Matt Ely's testimony not credible. *See City of Keller*, 168 S.W.3d at 819 (noting fact finder is sole judge of credibility of witnesses and weight given to their testimony). Among other evidence, when asked by the court why Texan Pearl did not timely send its list of deductions to the security deposits, Matt Ely answered, "Good question" and that he was "afraid [he did]n't" have a good answer. The county court also could have found that the charges on the accountings were unnecessary or for matters of "normal wear and tear." *See* Tex. Prop. Code § 92.001(4).

Based on our review of the evidence, we conclude that the county court's conclusion that Texan Pearl retained the security deposits in bad faith is supported by the evidence. *See BMC Software Belg.*, 83 S.W.3d at 794; *see also City of Keller*, 168 S.W.3d at 807. We overrule Texan Pearl's second issue.

11

**Damages for Conversion**

In its third issue, Texan Pearl contends that the county court erred in awarding damages to Victoria for the loss of personal property under the tort of conversion. *See Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971) (defining tort of conversion); *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.) (listing elements of conversion). Texan Pearl argues that "the evidence conclusively established that [Victoria] abandoned the personal property by leaving it in the apartment past the move-out date," and that the lease gave Texan Pearl the right to "remove any property in the apartment" at that point. It was undisputed, however, that Victoria had paid rent through the end of January, and the evidence included photographs of the personal property in a closet at the Texan Pearl apartment, Victoria's itemized list of that property, and Victoria's testimony concerning the value of that property. Matt Ely also admitted that Victoria had the right to continue using the Texan Pearl apartment until the end of January and that the cleaning crew "got rid of" things that they found in the apartment prior to the end of January. The court could have credited this evidence to conclude that Texan Pearl converted Victoria's property. *See Waisath*, 474 S.W.2d at 447; *Wise*, 436 S.W.3d at 412. We overrule Texan Pearl's third issue.

## CONCLUSION

Having overruled Texan Pearl's issues, we affirm the county court's judgment.

_____
                          Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   October 14, 2015