**Opinion issued August 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00258-CV

_____

**S-G OWNERS ASSOCIATON, INC., Appellant**

**V.**

**LURDES C. SIFUENTES, Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1071865**

---

## O P I N I O N

This is a case brought by a homeowners' association against a homeowner, seeking to recover past-due maintenance fees and to foreclose on a lien against the home to satisfy the debt. After a bench trial, the court ruled against the homeowners'

association, and it now appeals. Appellant S-G Owners Association, Inc. challenges the factual sufficiency of the evidence to support the take-nothing judgment.

The homeowners' association had the burden of proof at trial to prove a breach of the applicable deed restriction, as well as the amount it sought to recover. Based on this record, we cannot conclude that the great weight and preponderance of the evidence presented at trial compelled a finding in the association's favor, or that the trial court's conclusions as a factfinder were clearly wrong and unjust. Accordingly, we affirm.

## Background

In 2006, appellee Lurdes C. Sifuentes bought a tract of land located in a subdivision called Canyon Lakes Village Section One. The deed specified that the conveyance was made "subject to any and all valid and subsisting restrictions, . . . reservations, maintenance charges together with any lien securing said maintenance charges, . . . conditions and covenants, if any, applicable to and enforceable against the . . . property as shown by the records of the County Clerk." A "Declaration of Covenants, Conditions and Restrictions" applicable to the subdivision was filed with the Harris County Clerk in 2000. Pursuant to these deed restrictions, all property located in the subdivision is subject to a covenant to pay annual assessments. The obligation to pay the assessment is secured by a lien on the property. The deed

2

restrictions specify that appellant S-G Owners Association, Inc. has the power to assess and collect maintenance fees.

In pertinent part, the deed restrictions included the following provisions:

**Article VI.**

**ANNUAL MAINTENANCE ASSESSMENTS ("Assessments")**

    Section 1.    The Maintenance Fund.

. . . [S-G Owners Association, Inc. ("The Association")] shall set the required capital contribution in an amount sufficient to permit meeting the projected needs of the Association . . . . The capital contribution required, if any, shall by fixed by the Board and included within and distributed with the applicable budget and notice of Assessments.

    . . . .

    Section 3.    Creation of the Lien and Personal Obligation of Assessments. Each Lot in the Property is hereby subjected to the annual maintenance charges as set out in this Article, and each Owner of any Lot by acceptance of a deed therefore whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay the Association: (1) Assessments or charges; (2) special Assessments . . . (3) any charge back for costs, fees, expenses, attorney's or other charges incurred by the Association in connection with the enforcement of these Declarations . . . . The Assessments, special Assessments and charge backs, together with the interests, costs, late charges, and reasonable attorney's fees, shall be a charge on the Lot and shall be a continuing lien upon the property against which such Assessments are made . . . .

    Section 4.    Payment of Assessments. The Assessments shall be paid by the Owner or Owners of each Lot in the Association in annual installments. The annual periods for which maintenance charges shall be levied shall be January 1 through December 31, with payment being due by January 15 of each year. The rate at which each Lot shall be assessed as to the Assessment shall be determined annually, shall be

billed in advance and may be adjusted from year to year by the Board of Directors of the Association as the needs of the Subdivision may, in the judgment of the Association, require . . . .

. . . .

Section 13. Effect of Nonpayment of Assessments. Any Assessment not paid within thirty (30) days after the due date shall bear interest at the rate of ten percent (10%) per annum. The Association may in addition charge a late charge for Assessments paid more than fifteen (15) days after the due date. The Association may bring an action at law against the Owner personally obligated to pay same, or foreclose the liens against the property. Interest, costs, late charges and attorneys fees incurred in any such collection action shall be added [t]o the amount of such Assessment or charge. An Owner, by his acceptance of a deed to a Lot, hereby expressly vests in the Association and its agents, the right and power to bring all actions against such Owner personally for the collection of such charges as a debt and to enforce the aforesaid lien by all methods available for enforcement of such liens, including, specifically, non-judicial foreclosure pursuant to Article 51.002 of the Texas Property Code (or any amendment or successor statute) and each such Owner expressly grants to the association power of sale in connection with said lien.

. . . .

Section 15. Date of Commencement of Annual Assessment Due Dates. . . . The Association shall fix the amount of the Assessment against each Lot at least thirty (30) days in advance of each assessment period. Written notice of the assessment shall be mailed (by U.S. first class mail) to every Owner subject thereto. The payment dates shall be established by the Association. . . .

. . . .

From 2006 through 2013, Sifuentes paid annual maintenance charges on her property as assessed by S-G Owners Association. She failed to timely pay an assessment in 2014.

4

S-G Owners Association sent Sifuentes two written requests in 2014 for payment of the delinquent balance. Through its counsel, in that same year, the homeowners' association sent Sifuentes two demand letters. Then, at the end of 2015, S-G Owners Association filed suit to recover "all amounts that are legally due and owing." The homeowners' association sought to recover unpaid assessments, attorney's fees, court costs, and other charges authorized by the Declaration. It also sought to foreclose its lien against Sifuentes's property in satisfaction of the debt.

At trial, the board president of S-G Owners Association testified that Sifuentes had been sent four written requests for payment before the association initiated its lawsuit. The four letters, each dated from 2014, were admitted into evidence. The first letter, dated April 30, 2014, was sent by the homeowners' association, and it identified a past-due balance of $815, interest charges of $13.62, and an administrative cost of $8.93 for a certified letter, adding up to a total delinquent amount of $837.55. The final letter, dated November 21, 2014 and titled "Final Demand Letter," stated that the amount due had grown to $1,253.35.

The board president also identified a "Statement of Account" created in the context of the litigation, which listed a total of $5,086.10 in unpaid assessments, interest, late fees, pre-lawsuit attorney's fees, and association collection costs for January 2014 through March 1, 2017. The "Statement of Account" was admitted

5

into evidence. An attorney for S-G Owners Association also testified about attorney's fees incurred in the dispute.

Representing herself at trial, Sifuentes testified that she became aware of the required annual assessment within months of purchasing her property in 2006. She stated that she had paid the assessments due in 2006 through 2013. Sifuentes experienced financial difficulties in 2014, and she conceded that she failed to pay the assessment due that year. She further conceded that she had not paid an assessment since 2013.

Sifuentes denied receiving the 2014 correspondence from the homeowners' association and its lawyers. She stated that she contacted S-G Owners Association midway through 2015 in an attempt to pay the past-due amount, but representatives would not talk to her about her account. Sifuentes testified that after an unsuccessful attempt to "pay over the phone to the association," she "sent a check for 2000" which she had not received back. She testified that each time she contacted S-G Owners Association, its representatives refused to accept payment from her, and she was told that they could not speak with her about the past-due account. Sifuentes stated that a representative from S-G Owners Association informed her that it could not accept payment directly because counsel already had been retained, and that she should wait for the attorney to contact her.

According to Sifuentes, prior to receiving notice that she was being sued, she received a letter "around November of 2015" that stated she would not receive a bill for that year because the matter was being handled by attorneys. She conceded that she never sent payment to the attorneys. She stated, however, that she had called the attorney "a couple of times" and left a message providing her email address, requesting that the attorney contact her. She stated that she did not receive any communication from the attorney's office until after receiving notice of the lawsuit against her.

The trial court entered a take-nothing judgment in favor of Sifuentes. S-G Owners Association timely requested findings of fact and conclusions of law. On the same day the homeowners' association filed its request, the trial court filed a notice requesting both parties to prepare and submit proposed findings of fact and conclusions of law. Neither party filed proposed findings and conclusions, and the trial court did not file its own.

S-G Owners Association appealed from the take-nothing judgment.

**Analysis**

**I.    Effect of court's failure to file findings of fact and conclusions of law**

S-G Owners Association argues that it has been harmed by the trial court's failure to file findings of fact and conclusions of law following a timely request.

7

In a case tried without a jury, any party may request, within 20 days after the judgment is signed, that the trial court file written findings of fact and conclusions of law. TEX. R. CIV. P. 296. The court should file its findings of fact and conclusions of law within 20 days of a timely request. TEX. R. CIV. P. 297. If a trial court fails to issue timely findings of fact and conclusions of law following a party's timely request, the requesting party must file a "Notice of Past Due Findings of Fact and Conclusions of Law" within 30 days of its original request. TEX. R. CIV. P. 297. When the requesting party fails to timely file a notice of past-due findings and conclusions, it waives the right to complain on appeal about the trial court's failure to file them. *See Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 255–56 (Tex. 1984); *see also Guillory v. Boykins*, 442 S.W.3d 682, 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

S-G Owners Association filed a timely request for the trial court to issue findings of fact and conclusions of law. The trial court did not file any findings of fact and conclusions of law. However, because the record does not reflect that S-G Owners Association filed a notice of past-due findings and conclusions, it has waived this complaint on appeal.

## II. Factual sufficiency of the evidence to support take-nothing judgment

S-G Owners Association asserts that because it was undisputed at trial that Sifuentes owed and failed to pay past-due maintenance assessments, it was entitled

8

to: judgment on the debt for the past-due assessments, accrued interest and late charges, and costs incurred in attempts to collect on the debt; reasonable attorney's fees; and foreclosure of the lien to recover the amounts awarded. S-G Owners Association thus contends that the trial court erred by entering a take-nothing judgment in favor of Sifuentes because it is against the great weight and preponderance of the evidence. Although the homeowners' association's brief asserts that "the court's findings are reviewable for legal and factual sufficiency," it has failed to actually challenge the legal insufficiency of the evidence to support the judgment by arguing that the evidence conclusively proved its claims as a matter of law.

When a party complains of the factual insufficiency of an adverse finding on an issue for which it carried the burden of proof in the trial court, that party must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We must consider and weigh all of the evidence, and we may set aside a finding only if it is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* To reverse for factual insufficiency of the evidence, we must be able to "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence" in

support of the judgment. *Id.* (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

In the absence of findings of fact and conclusions of law, we imply all findings of fact necessary to support the judgment. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When, as in this case, there is a complete reporter's record, implied fact findings are not conclusive, and may be challenged for legal and factual sufficiency. *Id.*

In a bench trial, the trial court acts as the factfinder and is the sole judge of the credibility of witnesses. *Mohammed v. D. 1050 W. Rankin, Inc.*, 464 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The trial court determines the weight of testimony, and it resolves conflicts and inconsistencies in the testimony. *Mohammed*, 464 S.W.3d at 744. If the evidence is subject to reasonable disagreement, this court will not reverse the judgment of trial court. *Id.* at 744–45.

"In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice." *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). The Canyon Lakes Village Section One deed restrictions specify

that all property located in the subdivision is subject to a covenant to pay annual assessments to S-G Owners Association, to be "used exclusively to promote the recreation, health and welfare of the residents in the Property and for the improvement and maintenance and acquisition of Commons Area." The covenant to pay maintenance assessments thus touches and concerns the land. *See id.* (citing 5 R. Powell, *The Law of Real Property* § 673[2] at 60–46 (15th ed. 1986), and *Restatement of Property* § 537, at 3224 (1944)).

The deed to Sifuentes's property stated that it was conveyed subject to "all valid and subsisting . . . maintenance charges together with any lien securing said maintenance charges . . . if any, applicable to and enforceable against" it as shown by the records of the Harris County Clerk. The homeowners' association did not prove affirmatively that the deed restrictions were enforceable against Sifuentes, as there was no evidence presented to prove that the restrictions were enforceable against her predecessors in interest who owned the property before her. Nevertheless, she conceded at trial that she was obliged to pay the assessments.

The deed restrictions that authorized the assessment of fees at issue in this case are restrictive covenants concerning real property and may be enforced in court by a homeowners' association. *See* TEX. PROP. CODE §§ 202.001(4), 202.004(b). To recover compensatory damages for unpaid assessments and related fees and costs, it was the association's burden at trial to prove both a breach of the deed restriction

11

and the amount of damages. *See, e.g.*, *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547 (Tex. App.—Houston [1st Dist.] 1994, no writ) (deed restrictions are treated as contracts among the parties); *see also Restatement (Third) of Property (Servitudes)* § 8.3 (2000); *Cause of Action to Enforce Restrictive Covenant Applicable to Residential Subdivision*, 25 *Causes of Action 2d* 371, §§ 4, 35 (2004).

S-G Owners Association alleged that Sifuentes failed to pay assessments that were due in 2014, 2015, 2016, and 2017. Its trial evidence to this effect primarily consisted of a "statement of account" which was self-evidently created for purposes of litigation—the document had the style of the lawsuit on it. The statement listed amounts of assessments for each year, the accrued interest and late fees on the past-due assessments, and attorney's fees and other costs incurred in the homeowners' association's attempts to collect on the debt. The trial court, as factfinder, could have discounted the weight of this evidence considering that no business records of the homeowners' association were offered into evidence to support the alleged litany of damages. The sponsoring witness, the board president of the homeowners' association, did not testify that she had personal knowledge to support information stated on the "statement of account," and she did not otherwise vouch for its accuracy. Other than the correspondence relating to the 2014 assessment and the testimony presented to prove the amount of attorney's fees, the homeowners' association presented no evidence to support the information compiled

12

on the "statement of account"—no proof of the amounts for assessments on Sifuentes's property from 2015 through 2017, no proof of how and when she was informed of the amounts due, and no proof of when the property owners were told their payments were due.

Against the relatively weak evidence presented to establish liability for particular amounts of past-due assessments and associated fees and costs, Sifuentes herself testified that she did not receive the letters offered into evidence about her failure to timely pay the 2014 assessment, and S-G Owners Association offered no similar evidence of correspondence relating to failure to pay assessments in subsequent years. Sifuentes testified that she had made a $2,000 payment in the form of a check. She testified that S-G Owners Association told her to wait until she heard from the association's attorneys, and that she herself had unsuccessfully attempted to contact the attorneys. She affirmatively testified that the amount S-G Owners Association sought to recover for the 2017 assessment was not yet due.

Sifuentes conceded at trial, and she does not dispute on appeal, that as the owner of the deed-restricted property, she is required to pay an annual assessment. Though she claimed to have submitted a check for $2,000, she also admitted she had failed to pay any assessment after 2013.

As factfinder, the trial court was permitted to consider all of the facts and surrounding circumstances in connection with each witness, to accept or reject all or

13

any part of each witness's testimony, and to arrive at its conclusion as to the facts of this case. *See Mohammed*, 464 S.W.3d at 744; *Sw. Bell Media*, 825 S.W.2d at 493. Considering the weakness of the homeowners' association's evidence to prove liability for specific assessments and associated fees and costs, as well as the conflicting evidence about whether Sifuentes was actually billed for the assessments and whether she made partial payments on her account, we cannot conclude on this record that the judgment against the homeowners' association was clearly wrong and unjust. Simply put, the trial judge could have concluded that the homeowners' association failed to adequately carry its burden of proof at trial. Even to the extent Sifuentes admitted that she owes some amount for past-due assessments, the trial court could have concluded it was unable on the record of evidence presented to determine any specific amount currently due and payable.

We conclude that the trial court's denial of S-G Owners Association's request for money damages under these circumstances was not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. Absent a determination of damages, the trial court had no basis upon which it could grant S-G Owners Association's request to foreclose the lien on Sifuentes's property. Because S-G Owners Association did not prevail on its claim, it is not entitled to attorney's fees under section 5.006 of the Texas Property Code. *See Indian Beach Prop.*

*Owners' Ass'n v. Linden*, 222 S.W.3d 682, 697 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## Conclusion

We affirm the trial court's take-nothing judgment.



Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.