Larry Wayne PREWITT and Gary Lynn Prewitt, Petitioners,

v.

Ronald C. BRANHAM and Glenn Foster, Inc., Respondents.

No. C–1472.

Supreme Court of Texas.

Dec. 1, 1982.

Rehearing Denied Jan. 12, 1983.

Joseph Chacon, Jr., San Antonio, for petitioners.

Roger W. Wooldridge, Gresham, Davis, Gregory, Worthy & Moore, A.W. Worthy, San Antonio, for respondents.

PER CURIAM.

This is a conversion suit. The Prewitts sued Ronald C. Branham and Glenn Foster,

Inc.[1] for converting the assets of the Prewitts' automobile body shop business. Gary Prewitt owned and operated the body shop as his sole proprietorship. He and Branham orally agreed[2] to form a corporation to operate the body shop. Prewitt agreed to contribute the assets[3] of the business for 50% of the stock of the proposed corporation. Branham represented he would contribute $50,000 to receive 25% of the stock. Instead of contributing his own money, Branham borrowed the $50,000 from defendant Glenn Foster, Inc., as a loan to the not yet existent corporation. By showing the $50,000 loan proceeds check to Gary Prewitt, Branham tricked him into assigning the business assets to the proposed corporation. On the jury verdict, the trial court rendered judgment against Branham and Glenn Foster, Inc., for actual and exemplary damages. The court of appeals reversed and rendered judgment that the Prewitts take nothing against the lender. It also reversed the judgment as to Branham and remanded for new trial for a number of errors in the submission of special issues. 636 S.W.2d 507.

■ The Prewitts' theory against the lender, Glenn Foster, Inc., was that it converted their property by obtaining and recording a written security interest in the personal property before it belonged to the corporation. The lender never attempted to foreclose the purported security interest and never attempted to exercise any actual control over the property. We agree with the court of appeals that the mere taking and recording of a security interest upon personal property even though from someone who is not the true owner does not constitute conversion, when the party taking the security interest never exercises ownership or control other than the filing of the security interest. *Dietzman v. Ralston Purina Co.,* 246 Or. 367, 425 P.2d 163 (1967); *Richstein v. Roesch,* 71 S.D. 451, 25 N.W.2d 558 (1946); Annot., 169 A.L.R. 100 (1947).

■ Branham objected to the damage issue because it did not fix the time for valuing the property converted. Even if the conversion was accompanied by fraud, there was no pleading or proof that the property converted was of changing or fluctuating value. The measure of damages was therefore the value of the property *at the time* and place of the conversion. *De-Shazo v. Wool Growers Central Storage Co.,* 139 Tex. 143, 162 S.W.2d 401 (1942). We agree with the court of appeals that the failure to include the time for fixing value in the damage issue was error.

■ Branham also misappropriated and sold the long-term lease on the business premises. The court of appeals held that the lessee's rights in a written lease were real property that could not be included as an element of damages for conversion. We disapprove that holding. There was evidence Branham forged Prewitt's signature to the lease assignment. The lessee's rights under a lease are treated in law as personal property. The conversion of the document in which the rights had been merged supports a conversion action for the value of the rights represented by it. *Nelson v. King,* 25 Tex. 655 (1860); 49 Am.Jur.2d *Landlord and Tenant,* § 7 (1970); W. Prosser, Law of Torts, § 15, at 81–82 (4th ed. 1971). We also disapprove the holding of the court below that Branham was entitled to an "assent and acquiescence" issue because the proposed issue would be an inferential rebuttal issue prohibited by Rule 277, Tex.R.Civ.P.

The application for writ of error is refused, no reversible error.

---

1. Two additional defendants in the trial court are not parties to this appeal.

2. Another defendant, Kip Eddy, was also a party to the agreement. Eddy was to receive the other 25% of the shares of the proposed corporation.

3. The jury valued the contributed assets at $56,000.