ROBIN SINGH EDUCATIONAL
SERVICES, INC., Appellant

v.

TEST MASTERS EDUCATIONAL
SERVICES, INC., Appellee.

No. 14–09–00974–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 2011.

Rehearing Overruled April 21, 2011.

---

Daniel J. Sheehan, Dallas, Michael Patrick Mcshan, Dallas, for Appellant.

Kevin Dean Jewell, Houston, Charles Teilhard Jeremiah, Houston, for Appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant, Robin Singh Educational Services, Inc., appeals from the granting of a motion for summary judgment in favor of appellee, Test Masters Educational Services, Inc. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and appellee both offer test preparation courses for various standardized scholastic examinations. Appellant is a California company based in Los Angeles, while appellee is a Texas company based in Houston. Appellee operates as "Test Masters Educational Services" and owns the domain name "www.testmasters.com" and corresponding email addresses. Appellant operates as "Testmasters" and owns the domain names "www.testmasters.net" and "www.testmasters180.com." Appellant and appellee have engaged in extensive litigation over the use of the name

"Testmasters" in all of its various forms. In the litigation involved in this appeal, appellant asserts a single cause of action against appellee: conversion. Specifically, appellant contends that potential consumers of appellant's test preparation courses, confused as a result of the similar names of the two businesses, mistakenly sent email communications to appellee. Appellant further asserts (1) it has a right to possess these "misdirected" emails; (2) it has demanded that appellee "return" them; and (3) that appellee has refused to do so.

Eventually, appellee moved for summary judgment. In its motion, appellee argued it was entitled to summary judgment because (1) email communications are intangible property incapable of being converted as a matter of law; and (2) receipt of misdirected intangible electronic communications is not conversion of property under Texas law. Following a hearing, the trial court granted appellee's motion without specifying the reason and dismissed appellant's claim. This appeal followed.

### DISCUSSION

In two issues on appeal, appellant asserts the trial court erred when it granted appellee's motion for summary judgment. Initially, appellant contends the trial court erroneously determined that email communications are intangible property incapable of being converted under Texas law. In his second issue, appellant argues that if we conclude emails are intangible property, we should still reverse the summary judgment because the so-called merger exception applies to the misdirected emails.

### I. The standard of review.

█ The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001). In addition, summary judgment is proper where a plaintiff's claim is not cognizable under Texas law. *See Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 898 (Tex.App.-Dallas 2001, no pet.). We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

### II. Does Texas conversion law encompass intangible property?

█ "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (*quoting Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971)). The elements of a cause of action for conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property. *Id.*

██ Appellant's claim is based solely on the alleged conversion of intangible electronic communications which appellant alleges were mistakenly sent to appellee by potential customers of appellant. However, under Texas law, a tort action for conversion is limited to tangible property. *See Express One*, 53 S.W.3d at 901 ("Texas law has never recognized a cause of action for conversion of intangible property ex-

cept in cases where an underlying intangible right has been merged into a document and that document has been converted.") Because the allegedly misdirected emails are intangible, they cannot support a conversion claim. *See id.* Therefore, we overrule appellant's first issue.[1]

### III. Did appellant waive its second issue?

■ In its second issue, appellant asserts that if we decide emails are intangible personal property, then the so-called "merger exception" should apply to defeat appellee's motion for summary judgment. Under the "merger exception," some courts have held that certain types of intangible property rights can be converted where the underlying intangible right has been merged into a physical document and that document itself has been converted. *Pebble Beach Co. v. Tour 18 I, Ltd.,* 942 F.Supp. 1513, 1569 (S.D.Tex.1996). Under this so-called "merger exception," Texas courts have recognized conversion claims involving the following types of intangible property: lease documents, *Prewitt v. Branham,* 643 S.W.2d 122, 123 (Tex.1983); confidential customer lists, *Deaton v. United Mobile Networks, L.P.,* 926 S.W.2d 756, 762 (Tex.App.-Texarkana 1996), *rev'd in part on other grounds,* 939 S.W.2d 146 (Tex.1997); and shares of stock, *Watts v. Miles,* 597 S.W.2d 386, 387–88 (Tex.Civ. App.-San Antonio 1980, no writ).

■ In response to this issue, appellee asserts appellant waived this argument on appeal because it was not presented in appellant's summary judgment response. To preserve an argument against the granting of a motion for summary judgment for appellate review, the non-movant must expressly present that argument to the trial court within its written response to the motion. *Priddy v. Rawson,* 282 S.W.3d 588, 597 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). Appellant did not include in its summary judgment response any argument that the trial court should deny appellee's motion because the misdirected emails fall within the "merger exception." Thus, appellant failed to preserve this issue for appellate review. We overrule appellant's second issue.

### CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.

FROST, J., Concurring.

KEM THOMPSON FROST, Justice, concurring.

The appellant/plaintiff, a company in the business of preparing students for the Law School Admission Test, sued the appellee/defendant, a company that provides the same service, asserting a conversion claim based on the defendant's alleged refusal to give the plaintiff emails that the defendant received from consumers who allegedly thought they sent their emails to the plaintiff but, in fact, sent their emails to the defendant. The defendant moved for a traditional summary judgment on two grounds:

(1) Emails that are in electronic form cannot be converted as a matter of law; and

---

1. To the extent appellant invites this court to extend the law of conversion to include misdirected intangible email communications, we decline that invitation. *See Bren–Tex Tractor Co., Inc. v. Massey–Ferguson, Inc.,* 97 S.W.3d 155, 161 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (stating that the creation of a new tort duty is beyond the province of an intermediate appellate court).

(2) Even presuming the truth of the plaintiff's allegations, as a matter of law, the defendant has not wrongfully exercised dominion over these emails because they were lawfully directed to the defendant and the plaintiff has never possessed or owned these emails.

The trial court granted summary judgment on both grounds, but, on appeal, the plaintiff has not challenged the second ground. Rather than summarily affirm the trial court's judgment based on the failure to challenge both grounds, the majority affirms based on the first ground. In affirming on this ground, the majority holds, as a matter of first impression under Texas law, that a document in the form of an email cannot be converted as a matter of law, even though the same document could be converted if the email were printed or if it had been created in hardcopy form. In reaching today's holding the majority fails to address or analyze several key questions relevant to this cutting-edge legal issue. The better course would be to leave the resolution of this issue for another day and affirm based on the failure to challenge the second ground.

### *The Conversion Claim*

Appellant/plaintiff Robin Singh Educational Services, Inc. ("Singh Services") filed suit in the trial court against appellee/defendant Test Masters Educational Services, Inc. ("Test Masters"). In its live petition, Singh Services asserted only a claim for common-law conversion, for which it sought legal and equitable relief. In its summary-judgment motion Test Masters presumed the truth of all factual allegations in Singh Services's live pleading. In that live pleading, Singh Services alleged as follows:

- Singh Services began preparing students for the Law School Admission Test ("LSAT") in 1991 and is now one of the largest LSAT test preparation service providers in the United States. Singh Services operates its business under the name "TestMasters" and has a website for its business with the domain name "www.testmasters180.com."

- Some time after July 2002, Test Masters entered the LSAT test preparation business. Test Masters operates its business under the name "Test Masters" or "Testmasters" and has a website for its business with the domain name "www.testmasters.com."[1]

- In the course of discovery in federal trademark litigation between the two companies, Test Masters produced "many misdirected emails from consumers inquiring about LSAT services, even though at the time [Test Masters] did not offer LSAT services." Test Masters received inquiries about LSAT services from prospective students who mistakenly believed that they had contacted Singh Services.

- Test Masters used this confusion to pass itself off as Singh Services's nationally recognized "TestMasters" company. It enrolled students in its hastily created LSAT course knowing that the students intended to enroll in Singh Services's course.

---

**1.** According to Singh Services's petition, Singh Services previously had a trademark registration for the "TestMasters" name and sued Test Masters in federal court alleging trademark infringement and seeking to be awarded the "www.testmasters.com" domain name. Singh Services won in the trial court and was awarded the domain name, but the court of appeals reversed, canceled Singh Services's trademark and gave the domain name back to Test Masters. According to the petition, Test Masters then entered the LSAT test preparation business.

- Test Masters created a website that largely copied Singh Services's website. As a result, countless LSAT preparation consumers searching for Singh Services's company on the internet have been fooled into thinking that Test Masters website at www.testmasters.com is actually Singh Services's website. Test Masters perpetuated this confusion by deliberately failing to tell consumers that there are two different companies offering the same services under the same name.

- As a result of these events, Singh Services and Test Masters are operating under the same name, with similar domain names for their websites, and offering similar services to a similar set of consumers. It is not surprising that prospective LSAT students and others intending to contact Singh Services have contacted Test Masters by mistake.

- In discovery in the trademark lawsuit, Test Masters produced some but not all "misdirected emails," and Test Masters has not given Singh Services any misdirected emails since January 2004. Test Masters has not produced or returned any emails from an actual confused customer since its production during discovery in the trademark lawsuit. Test Masters does not deny that such emails exist, and Singh Services has asked Test Masters to provide these emails to Singh Services on numerous occasions. Test Masters has steadfastly refused. Therefore, Singh Services has asserted its conversion claim "to retrieve its mail (the various emails directed at Singh Services but instead sent to [Test Masters]) that [Test Masters] has for years wrongfully converted."

- Test Masters has received emails from Singh Services's attorneys who were intending to contact Robin Singh and Singh Services's in-house counsel but mistakenly sent the emails to the wrong addresses. These emails contained confidential information protected by the attorney-client privilege, work product rule, and the right of privacy. Singh Services requested that these emails be returned, but Test Masters has refused.

- Test Masters has received and continues to receive misdirected emails from potential customers and others intending to contact Singh Services. Singh Services has a right to possess those emails. Singh Services has demanded that Test Masters return these misdirected emails but Test Masters has refused. Singh Services has suffered actual damages as a result of Test Masters's conversion of these emails. Singh Services seeks to recover actual damages as well as a court order requiring Test Masters to return to Singh Services the converted property—emails directed at Singh Services but inadvertently sent to Test Masters.

### The Summary Judgment Motion

Test Masters filed a summary-judgment motion in which Test Masters argued that, even presuming the truth of all factual allegations in Singh Services's petition, Singh Services's conversion claim fails as a matter of law. Test Masters noted that (1) it possesses all legal rights to its email addresses and the domain name for its website and (2) a federal district court has permanently enjoined Singh Services from applying for a federal trademark for the mark "testmasters." Test Masters sought a traditional summary judgment based on two grounds: (1) because emails are intangible property, as a matter of law, they cannot be converted and (2) as a matter of law Test Masters could not have wrongful-

ly exercised dominion or control over emails that third parties lawfully directed to Test Masters at its internet domain, and Singh Services has no right of ownership or possession regarding such emails. The second summary-judgment ground has its own section in the summary-judgment motion, and the heading for this section reads: "[Test Masters] did not exercise wrongful dominion over the allegedly misdirected emails to the exclusion of [Singh Services]."

### Arguments in the Opening Appellate Brief

The trial court granted Test Masters's summary-judgment motion without specifying the grounds upon which the trial court relied. In this situation, this court must affirm the trial court's judgment if any of the independent summary-judgment grounds is meritorious. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000); *Ramco Oil & Gas Ltd. v. Anglo–Dutch (Tenge) L.L.C.,* 207 S.W.3d 801, 826–27 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Unless Singh Services has challenged both of the summary-judgment grounds in its opening appellate brief, this court must affirm. *See Bartee v. Baylor College of Medicine,* No. 14–06–00324–CV, 2007 WL 2989614, at *5 (Tex.App.-Houston [14th Dist.] Oct. 16, 2007, no pet.) (mem. op.); *Fish v. Marsters Co.,* No. 06–00129–CV, 2007 WL 1438555, at *6 (Tex.App.-Houston [14th Dist.] May 17, 2007, pet. denied) (mem. op.); *Ramco Oil & Gas Ltd.,* 207 S.W.3d at 826–27. But Singh Services asserts in its opening brief that there is only one summary-judgment ground, and Singh Services does not challenge the second ground upon which the trial court granted summary judgment. This is clear from Singh Services's sole appellate issue,[2] which reads in its entirety as follows:

[Test Masters] asserted as its sole ground for summary judgment that "e-mail communications are intangible property incapable of being converted as a matter of law." In today's modern age, where e-mails have replaced paper mail as the predominant form of commercial communication, is a claim for the conversion of e-mails cognizable under Texas Law?

In its appellate brief, Singh Services never mentions that the trial court granted summary judgment based on the second ground in which Test Masters asserted that it could not have wrongfully exercised dominion or control over the emails as a matter of law. Singh Services does not assert that the trial court erred in granting summary judgment on this ground, nor does Singh Services provide any argument, analysis, record citations, or legal authorities addressing this summary-judgment ground. Even interpreting Singh Services's appellate brief liberally, this court cannot reasonably conclude that Singh Services has challenged the second summary-judgment ground. *See San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 337 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Fish,* 2007 WL 1438555, at *5–6. Because Singh Services was required to attack both summary-judgment grounds and Singh Services failed to do so, this court must affirm the trial court's summary judgment. And, this court need not and should not address the merits of either of the summary-judgment grounds. *See Bartee,* 2007 WL 2989614, at *5; *Fish,* 2007 WL 1438555, at *6; *Ramco Oil & Gas Ltd.,* 207 S.W.3d at 826–27.

### No Waiver of Any Argument Regarding the Merger Doctrine

The majority concludes that Singh Services waived any argument based on the

---

2. The majority incorrectly states that Singh Services presents two appellate issues.

merger doctrine that emails may be the subject of a conversion claim. The majority concludes that Singh Services may not rely on this doctrine because Singh Services did not assert the doctrine in its summary-judgment response. Even if Singh Services did not mention the merger doctrine in its summary-judgment response, Singh Services did not waive any argument based on this doctrine.

Test Masters sought a traditional summary judgment, and rather than take issue with the facts alleged in Singh Services's petition, Test Masters presumed for the sake of argument that all of these facts were true. Therefore, Test Masters undertook the burden of proving, as a matter of law, that the emails described in Singh Services's petition are not the type of property upon which a conversion claim can be based under Texas law. If, under the merger doctrine, these emails would be the type of property that could be the subject of a conversion claim, then Test Masters had the burden to show that the merger doctrine did not apply as a matter of law. This court's role is to conduct a de novo review of the trial court's traditional summary judgment, and Singh Services is free to make any argument on appeal that would show that Test Masters was not entitled to judgment as a matter of law based on the summary-judgment evidence and the summary-judgment grounds asserted in Test Masters's motion. *See County of Dallas v. Wiland,* 216 S.W.3d 344, 358, n. 62 (Tex.2007); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam);

*Rhône–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Ward v. Johnston,* 593 S.W.2d 422, 424 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ). Therefore, Singh Services did not waive the right to argue on appeal that the emails in question can be the basis of a conversion claim under the merger doctrine.

### No Need to Address the Merits.

The parties have not cited and research has not revealed any Texas case addressing whether an email that has not been printed or otherwise converted into a hard copy can be the subject of a common-law conversion claim.[3] On appeal, Singh Services has cited eight cases from other jurisdictions in support of its argument that such emails can be the basis of a common-law conversion claim, yet the majority does not discuss these cases.

In one of these cases, the Court of Appeals of New York held that documents that are kept only in electronic form on the hard drive of a computer can be the subject of a common-law conversion claim, even though, under New York law, there is a general rule that only tangible property can be converted. *See Thyroff v. Nationwide Mut. Ins. Co.,* 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272, 1275–1278 (2007). Summarizing some of the considerations in analyzing this issue, the *Thyroff* court observed:

> A variety of arguments have been made in support of expanding the scope of conversion. Some courts have decid-

---

**3.** Test Masters and the majority both cite to *Express One Intern., Inc. v. Steinbeck. See* 53 S.W.3d 895, 901 (Tex.App.-Dallas 2001, no pet.). But that case did not address whether an email could be the subject of a conversion claim. *See id.* In *Express One,* the plaintiff alleged that the defendant converted the plaintiff's trade name and that this property could be made the basis of a conversion claim because the defendant used the trade name as his screen name when he posted comments on an internet message board. *See id.* The *Express One* court rejected this argument and concluded that the trade name was intangible property that could not be the basis of a conversion claim. *See id.*

ed that a theft of intangible property is a violation of the criminal law and should be civilly remediable; that virtual documents can be made tangible "by the mere expedient of a printing key function"; that a writing is a document whether it is read on the computer or printed on paper; and that the expense of creating intangible, computerized information should be counterbalanced by the protection of an effective civil action.

On the other hand, the primary argument for retaining the traditional boundaries of the tort is that it "seem[s] preferable to fashion other remedies, such as unfair competition, to protect people from having intangible values used and appropriated in unfair ways." Nonetheless, advocates of this view readily concede that "[t]here is perhaps no very valid and essential reason why there might not be conversion of" intangible property and that there is "very little practical importance whether the tort is called conversion, or a similar tort with another name" because "[i]n either case the recovery is for the full value of the intangible right so appropriated." The lack of a compelling reason to prohibit conversion for redress of a misappropriation of intangible property underscores the need for reevaluating the appropriate application of conversion.

... The reasons for creating the merger doctrine and departing from the strict common-law limitation of conversion inform our analysis. The expansion of conversion to encompass a different class of property, such as shares of stock, was motivated by "society's growing dependence on intangibles." It cannot be seriously disputed that society's reliance on computers and electronic data is substantial, if not essential. Computers and digital information are ubiquitous and pervade all aspects of business, financial and personal communication activities. Indeed, this opinion was drafted in electronic form, stored in a computer's memory and disseminated to the Judges of this Court via e-mail. We cannot conceive of any reason in law or logic why this process of virtual creation should be treated any differently from production by pen on paper or quill on parchment. A document stored on a computer hard drive has the same value as a paper document kept in a file cabinet.

The merger rule reflected the concept that intangible property interests could be converted only by exercising dominion over the paper document that represented that interest. Now, however, it is customary that stock ownership exclusively exists in electronic format. Because shares of stock can be transferred by mere computer entries, a thief can use a computer to access a person's financial accounts and transfer the shares to an account controlled by the thief. Similarly, electronic documents and records stored on a computer can also be converted by simply pressing the delete button.

Furthermore, it generally is not the physical nature of a document that determines its worth, it is the information memorialized in the document that has intrinsic value. A manuscript of a novel has the same value whether it is saved in a computer's memory or printed on paper ... In the absence of a significant difference in the value of the information, the protections of the law should apply equally to both forms—physical and virtual.

*Id.* at 1275–1278 (citations omitted).

The Supreme Court of Texas has not addressed whether an email can be the subject of a common-law conversion claim. But the Supreme Court of Texas has held

that a lessee's intangible property rights under a lease can be converted if these rights are merged into a "document" and the document is converted. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1982) (per curiam). The Supreme Court of Texas did not define the scope of the term "document" in its opinion; but, in recent cases other courts—including this one—have stated that documents can be in either electronic or hard-copy form. See *In re Davis*, 305 S.W.3d 326, 332–33 (Tex. App.-Houston [14th Dist.] 2010, orig. proceeding) (characterizing a court order available on the Harris County District Clerk's website in electronic form as a "document"); *see also Kremen v. Cohen*, 337 F.3d 1024, 1034, n. 11 (9th Cir.2003) (stating that merger doctrine, as stated in section 242 of the Restatement (Second) of Torts, only requires merger into a "document" and that a document can be an electronic record).

Are the emails described in Singh Services's petition documents under opinions such as this court's opinion in *In re Davis?* If so, are these emails subject to conversion under the Supreme Court of Texas's opinion in *Prewitt v. Branham?* If the Supreme Court of Texas has not held that emails cannot be the basis of a conversion claim, is this court free to hold that emails can be the basis of a conversion claim? These are important questions that deserve serious consideration and analysis. But because Singh Services has not challenged all of the summary-judgment grounds in the case under review, this court need not and should not decide the issue presented by Singh Services today.

ANDERSON, J., majority.