Opinion issued June 18, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00667-CV

———————————

**SANDRA FLORES, Appellant**

**V.**

**INVERNESS FOREST RESIDENTS CIVIC CLUB, INC., Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-20120**

---

## MEMORANDUM OPINION

Sandra Flores owns a home subject to restrictive covenants that are enforced by Inverness Forest Residents Civic Club, Inc. Her home is also subject to Inverness's policies, regulations, and bylaws. Inverness sent Flores numerous notices that her property condition violated the deed restrictions and one of the

policies regarding maintenance, so Flores sued Inverness. She alleged that Inverness (1) improperly adopted policies, regulations, and voting provisions in the bylaws, rendering them invalid; and (2) improperly enforced the deed restrictions and an invalid policy against her.

Both parties moved for summary judgment on no-evidence and traditional grounds. The trial court granted Inverness's motion and denied Flores's motion. On appeal, Flores challenges the summary judgment in two issues. First, she argues that the trial court erred by implicitly finding that the challenged policies, regulations, and voting provision in the bylaws are valid. She further argues that the trial court erred by implicitly finding that the condition of her property violated one of the invalid policies and the deed restrictions. Second, Flores argues that because her interpretation of these instruments is correct, the trial court erred by granting Inverness's summary judgment motion and denying her summary judgment motion. We affirm.

## Background

Inverness is a homeowners association formed to enforce restrictive covenants and other rules in the Inverness Forest subdivision of Houston.[1] Flores owns a home

---

[1]     *See* TEX. PROP. CODE § 204.004(a) (stating that property owners' association "is a designated representative of the owners of property in a subdivision" and may be referred to as "homeowners association," "civic club," or similar term). Inverness is managed by a third-party company that is not a party to this proceeding.

in Inverness Forest and is subject to the deed restrictions, rules, and bylaws. The record does not indicate when Flores bought her home, but the deed restrictions have been in effect since 1965. In 2009, Inverness amended the deed restrictions and recorded a declaration containing them.

The deed restrictions govern several aspects of each property in the subdivision. For example, property owners are prohibited from:

- altering a "building" or erecting a new one without preapproval by the Architectural Control Committee;

- installing roof shingles below a certain minimum quality;

- installing fences taller than eight feet high;

- carrying on any "noxious or offensive trade, activity or noise";

- maintaining "the exterior of any structure" and "any fences, driveways or other improvements" in a manner other than one "consistent with its original appearance in a clean, safe and sightly condition"; and

- using the property "as a dumping ground for rubbish."

The deed restrictions also authorize Inverness or any property owner to "enforce these restrictive covenants against any person or persons violating or attempting to violate them" through legal proceedings "to restrain violation or to recover damages or dues for violation."

Between 2011 and 2016, Inverness enacted and recorded additional policies and regulations governing properties in Inverness Forest. These include:

- <u>Policy Regarding Maintenance</u> – "An application for approval of any proposed alterations must be submitted to the Architectural Control Committee (ACC). . . . Proposed alterations shall include but are not

3

limited to the following: painting, landscaping (including tree removal), and any and all alterations proposed to the lot and/or residence."

- <u>Resolution Regarding Roofs</u> – "The ACC may only approve" shingles of two specified brands of "the 40-year standard shingle" or "a similar s[h]ingle which is equal in quality to these two shingles." "The owner must obtain approval in writing from the ACC prior to the modification, repair, replacement and maintenance of his/her roof."

- <u>Resolution and Guidelines Regarding Composting Devices, Rain Barrels, Harvesting Devices, and Irrigation Systems</u> – implements requirements in Property Code section 202.007 prohibiting homeowners associations from including or enforcing certain restrictive covenants.

Finally, Inverness is governed by bylaws amended in 1993. According to the bylaws, Inverness's purpose is "to operate and provide facilities, including a swimming pool and clubhouse, in Inverness Forest, a Subdivision in Harris County, Texas, for the primary benefit of the residents of Inverness Forest." Members "shall be residents of Inverness Forest" who are 21 years old or older, and membership is limited to two voting members per residence. Each member has "the right to one vote, in person, at all meetings of the membership . . . ." "At all meetings of Members all questions" with few exceptions "shall be decided by the vote of the majority of the quorum." Quorum is defined as the members present at any meeting who are not delinquent in paying their dues. The deed restrictions contain a separate voting provision entitling "[e]ach lot in the subdivision" to one vote at a members meeting "[f]or purposes of restrictive covenants."

4

In 2020, Inverness began sending Flores notices that her property was in violation of the deed restrictions and the Policy Regarding Maintenance. In particular, she received notices that a new fence on her property violated the policy because she did not seek preapproval for the fence. She also received notices that a barbecue grill and "unsightly items" stored in public view violated various provisions of the deed restrictions. These notices asked Flores to "remove and store" the items out of view of the community.

Regarding the fence violation, Flores initially responded that her neighbor (who is her attorney) was responsible for building the fence, and she "did not build, fund, nor contract the fence," so therefore she could not have violated the policy. The evidence shows that Inverness never fined Flores for the numerous violations she received, although it did charge her nominal administrative and legal fees for sending some of the notices.

Flores sued Inverness in 2023. Her live petition disputed that her actions violated any of the deed restrictions or policies. Flores asserted claims for conversion of the intangible right to use her property, breach of contract, breach of deed restrictions, and injunctive relief seeking specific performance requiring Inverness to rescind all policies and rules that conflict with the restrictive covenants and remove the fees it had charged her for sending the notices. Flores also sought to recover her attorney's fees and court costs. She requested damages in the amount of

5

$1,640 per month, which she contended was the reasonable expected rental income of her property, from April 2022 through the date of judgment.

Inverness filed an answer generally denying Flores's allegations and asserting several affirmative defenses. Both parties moved for summary judgment.

Inverness moved for summary judgment on no-evidence and traditional grounds. It asserted that Flores did not state a claim for conversion because Texas law does not recognize a claim for civil conversion of real property or the intangible right to use one's property as alleged by Flores. Inverness also asserted that Flores had no evidence of several elements of her claims, including the breach elements of the claims for breach of contract and breach of deed restrictions and the wrongful act element required to obtain injunctive relief. Inverness disputed Flores's interpretation of the various restrictions and bylaws. It attached several exhibits, including the deed restrictions, bylaws, numerous violation notices, and demand letters from Inverness requesting that Flores comply with the restrictions.

Flores filed a response combined with her own summary judgment motion. She disputed Inverness's motion at every turn. She argued that her intangible right to use her property merged into the deed restrictions, and therefore she had a cognizable claim for conversion. She also argued that Inverness breached the deed restrictions and acted wrongfully by adopting invalid policies and voting provisions in the bylaws and by improperly enforcing the deed restrictions and invalid policies

6

against her. She attached numerous exhibits, including the deed restrictions; the challenged (and some unchallenged) policies; Inverness's bylaws; the notice letters from Inverness stating that her property condition violated the deed restrictions and the Policy Regarding Maintenance; a letter from her neighbor/attorney to Inverness stating that the neighbor—and not Flores—built the fence on her property; a settlement agreement between Inverness and another property owner settling unrelated violations of deed restrictions; and discovery responses.

The trial court denied Flores's motion, granted Inverness's motion, and rendered a final judgment. Flores filed a motion for reconsideration, but she attached no new evidence. The motion was overruled by operation of law. This appeal followed.

### Ripeness

Ripeness is a threshold issue that implicates subject-matter jurisdiction and emphasizes the need for a concrete injury for a justiciable claim to be presented. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (quotation omitted). "While standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000).

In evaluating ripeness, we consider "whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur,

rather than being contingent or remote.'" *Robinson*, 353 S.W.3d at 755 (quoting *Gibson*, 22 S.W.3d at 851–52). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Gibson*, 22 S.W.3d at 852. But a party can establish ripeness by demonstrating that a concrete injury is likely to occur. *Id.*

Ripeness is determined at the time of adjudication: "[J]ust as a case may become moot after it is filed, it may also ripen." *Perry v. Del Rio*, 66 S.W.3d 239, 250, 251 (Tex. 2001) (orig. proceeding). That is, although a claim need not be ripe at the time of filing, the plaintiff must demonstrate a reasonable likelihood that the claim will soon ripen, or the case must be dismissed. *Robinson*, 353 S.W.3d at 755. The "essence of the ripeness doctrine is to avoid premature adjudication" and "to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Id.* at 756.

Here, Flores challenges several of Inverness's deed restrictions, policies, regulations, and bylaws. She asserts that Inverness sent her notices that her new fence violated the Policy Regarding Maintenance and the storage location of her barbecue grill and unsightly items violated the deed restrictions. The notices requested that she remedy these violations. For these claims, the facts are sufficiently developed to show that Flores sustained a concrete injury, not a contingent or remote

8

one. *See id.* at 755 (quotation omitted); *Gibson*, 22 S.W.3d at 852. These claims are therefore ripe.

Flores also asserts that two resolutions—one governing roof materials and the other governing installation of composting and irrigation devices—were improperly adopted. She further asserts that voting provisions in the bylaws conflict with those in the deed restrictions. But Flores does not allege that she has or is likely to sustain any injury from the challenged resolutions or bylaws provisions. She has not alleged or offered any evidence showing that she has received any notices of violations under the regulations or that she plans to install a new roof or irrigation system that is subject to either challenged resolution. Nor has she alleged or offered any evidence showing that any votes have been taken under the challenged bylaws provisions or that she has been injured or will likely be injured by the voting provisions. Any injury from the resolutions or the voting provisions in the bylaws depends on contingent or hypothetical facts or events that have not yet come to pass. *See Gibson*, 22 S.W.3d at 852. Therefore, Flores's claims regarding the resolutions and the bylaws are not ripe in this proceeding.

We turn to the merits of the claims regarding the fence and barbecue grill violations.

**Summary Judgment**

Flores asserts two issues on appeal. First, she contends that the trial court erred by interpreting the deed restrictions and the policy to implicitly find that Inverness lawfully adopted and enforced them. This contention is the central premise of the substantive claims. Second, Flores contends that based on her interpretation of the deed restrictions and the policy, the trial court erred by granting Inverness's summary judgment motion and denying her summary judgment motion on the substantive claims. Because these issues are interrelated, we address them together.

**A.     Standard of Review**

We review a trial court's summary judgment ruling de novo. *Thompson v. Landry*, 713 S.W.3d 372, 376 (Tex. 2025). Here, the parties presented the case through competing summary judgment motions on both traditional and no-evidence grounds, and the trial court rendered a final judgment granting Inverness's motion and denying Flores's motion. *See* TEX. R. CIV. P. 166a(c), (i).[2] In this circumstance, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered if we determine the trial court erred. *Thompson*, 713 S.W.3d at 376; *Burris v. Metro.*

---

[2]     The supreme court recently amended Rule 166a, but the amendments apply only to a motion for summary judgment filed on or after March 1, 2026. Order, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The summary judgment motions in this case were filed before the effective date of the amendments, so the pre-amendment version of Rule 166a applies in this appeal. All citations in this opinion to Rule 166a are to the version of the rule that existed prior to March 1, 2026.

*Transit Auth. of Harris Cnty.*, 266 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

**B.      Governing Law**

A restrictive covenant is a negative covenant that limits the permissible uses of land. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279 (Tex. 2018) (quotation omitted). A seller and a purchaser of real property can contractually agree to restrictive covenants, and we will enforce them as a contract. *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, 698 S.W.3d 226, 231 (Tex. 2024); *see Tarr*, 556 S.W.3d at 280 ("[T]he courts have always treated unambiguous covenants as valid contracts between individuals.") (quotation omitted). While Texas law does not favor restraints on the free use of land, it acknowledges that restrictive covenants can enhance the value of real property: "The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots." *Tarr*, 556 S.W.3d at 279–80 (quotation omitted). Parties have a right to contract with relation to property as they see fit so long as the contract is lawful and accords with public policy. *Id.* at 279.

Restrictive covenants are subject to the general rules of contract construction. *Id.* at 280 (quotation omitted). Whether a restrictive covenant is ambiguous is a question of law for the court to decide by considering the covenants as a whole in

11

light of the circumstances present when the parties entered the agreement. *Id.* (quotation omitted). A covenant is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Id.* (quotation omitted). But if a covenant is susceptible to more than one reasonable interpretation, it is ambiguous. *Id.* (quotation omitted). Mere disagreement over the interpretation of a restrictive covenant, however, does not render it ambiguous. *Id.* (quotation omitted).

Our paramount concern when interpreting covenants is to give effect to the objective intent of the drafters of the covenant as reflected in the chosen language. *Id.* Words used in the restrictive covenant are given their commonly held meaning as of the date the covenant was written, not as of a later date. *Id.* (quotation omitted). Courts may not enlarge, extend, stretch, or change the words in a covenant. *Id.* (quotation omitted). We will avoid any construction that nullifies a restrictive covenant provision. *Id.* (quotation omitted).

The Legislature has instructed courts to liberally construe restrictive covenants to give effect to their purpose and intent. TEX. PROP. CODE § 202.003(a) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent."). Moreover, an exercise of discretionary authority by a homeowners association concerning a restrictive covenant "is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of

12

discretionary authority was arbitrary, capricious, or discriminatory." *Id.* § 202.004(a).

**C.      Breach of Contract, Breach of Deed Restrictions, and Injunctive Relief**

Flores contends that Inverness improperly adopted the Policy Regarding Maintenance and improperly enforced this invalid policy and the deed restrictions against her. These contentions underlie all her substantive claims for conversion, breach of contract, breach of deed restrictions, and injunctive relief.[3] Flores's main contentions regarding the policies and deed restrictions are summarized as follows:

- Inverness sent Flores notices that her failure to seek preapproval for a new fence on her property violated the Policy Regarding Maintenance. But Inverness improperly adopted the policy, so it is not valid, and she did not violate it.

- Inverness sent Flores notices that a barbecue grill and "unsightly items" stored in view of the community violated the deed restrictions. But the deed restrictions did not prohibit such storage.

Inverness moved for summary judgment in part by asserting that Flores had no evidence of the breach elements of the breach of contract and breach of deed restrictions claims or the wrongful act element of injunctive relief. Flores responded that Inverness's improper adoption and enforcement of the restrictions and the policy met these elements. She also moved for summary judgment based on the same

---

[3]      Flores also asserted a standalone claim for improper adoption of policies and bylaws. Inverness contends that this is not a cognizable claim. We agree with Inverness. Nevertheless, the allegations in the claim underlie all Flores's substantive claims, so we must address the allegations.

13

arguments. For the reasons discussed below, we disagree with Flores's interpretation of the deed restrictions and policy. We therefore conclude that no evidence supported at least one essential element of the claims for breach of contract, breach of deed restrictions, and injunctive relief.

### 1. Fence violation under the Policy Regarding Maintenance

Flores raises numerous challenges to the Policy Regarding Maintenance, including that it was improperly adopted and enforced. She first argues that Inverness adopted the policy under Property Code section 204.010(a)(6) rather than section 204.008. Because the policy is "not grounded in" the deed restrictions, she argues that Inverness was required to use the methods in section 204.008 to adopt the policy. We disagree.

The policy was adopted "to clarify an owner's obligation to maintain an owner's residence and lot." It contains three sections, including regulations about painting and landscaping. But Flores challenges the third section, which requires property owners to obtain preapproval for "any and all alterations proposed to the lot and/or residence," including "painting" and "landscaping (including tree removal)." The policy references Property Code section 204.010(a)(6) as authority for its enactment.

Section 204.008 provides methods for a homeowners association to extend, add to, or modify proposed deed restrictions:

14

An extension, addition to, or modification of restrictions proposed by a property owners' association may be adopted:

(1)    by a written ballot that states the substance of the amendment and specifies the date by which a ballot must be received to be counted;

(2)    at a meeting of the members represented by the property owners' association if written notice of the meeting stating the purpose of the meeting is delivered to each owner of property in the subdivision;

(3)    by door-to-door circulation of a petition by the property owners' association or a person authorized by the property owners' association;

(4)    by a method permitted by the existing restrictions; or

(5)    by a combination of the methods described by this section.

*Id.* § 204.008.[4] Subsection (4) does not apply in this case because the deed restrictions do not address any such method.

Section 204.010(a)(6), on the other hand, provides a simpler method for a homeowners association to regulate the use, maintenance, and appearance of a neighborhood unless "otherwise provided" by the association:

(a)    Unless otherwise provided by the restrictions or the association's articles of incorporation or bylaws, the property owners' association, acting through its board of directors or trustees, may:

---

[4]    Section 204.005 authorizes a homeowners association to approve and circulate a petition to extend, add to, or modify existing restrictions. TEX. PROP. CODE § 204.005(a). The petition is effective if it "is approved by the owners . . . of at least 75 percent of the real property in the subdivision or a smaller percentage required by the original dedicatory instrument" and the petition is filed as a dedicatory instrument with the county clerk. *Id.* § 204.005(b). Flores does not rely on section 204.005 or its voting requirements to support her argument, and we do not consider this section in our analysis.

15

\* \* \* \*

    (6)     regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision . . . .

*Id.* § 204.010(a)(6).

The Policy Regarding Maintenance references section 204.010(a)(6) as authority for the policy's enactment. The certification page states that the policy was approved at a meeting of the board of directors. Thus, the policy itself indicates that it was adopted under section 204.010(a)(6).

We are unpersuaded by the argument that the policy must be "grounded in" the deed restrictions. The plain language of section 204.010(a)(6) authorized Inverness, acting through its board, to regulate the use, maintenance, and appearance of the subdivision "[u]nless otherwise provided by the restrictions or the association's articles of incorporation or bylaws." *See id.* The Texas Supreme Court has stated that section 204.010(a)(6) "permits property associations within Harris County to regulate property uses within a given subdivision, unless the governing documents say the association cannot[.]" *JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 187 (Tex. 2022). The "important caveat at the outset of the statute prevents association actions contrary to the owners' agreements found in the deed restrictions." *Id.* The court held that "[s]ection 204.010(a)(6) does not authorize associations to adopt rules that conflict with their governing deed covenants." *Id.* at 182.

16

In *JBrice Holdings*, a homeowners association passed a rule banning short-term rentals to prevent a property owner from leasing his two townhouses. *Id.* at 182–83. But the deed restrictions required only that leases be in writing and subject to the deed restrictions and bylaws, and they prohibited any additional restrictions: "*Other than the foregoing, there shall be no restriction on the right of any townhouse owner to lease his unit.*" *Id.* at 182. The court concluded that "'[n]o restriction' means no restriction." *Id.* at 187. It thus held that the rule banning short-term rentals was invalid because it conflicted with the deed restrictions. *Id.* at 182.

*JBrice Holdings* and the plain language of section 204.010(a)(6) permit an association to regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision *unless* the regulation conflicts with (or is otherwise prohibited in) the deed restrictions. We therefore disagree with Flores that the Policy Regarding Maintenance had to be "grounded in" the deed restrictions to be permissible under section 204.010(a)(6).

Flores argues that the policy requires preapproval for "any and all alterations proposed to the lot and/or residence," which conflicts with the deed restrictions that only require preapproval for buildings. It is true that the policy expanded the preapproval requirements beyond those contained in the deed restrictions. But nothing in the deed restrictions prohibits expanding the preapproval requirements. *See id.* Fences were already regulated under the deed restrictions: They were limited

to a maximum height and certain materials like wood, brick, and wrought iron. Perhaps over time, owners were not complying with these restrictions. Section 204.010(a)(6) permitted Inverness to regulate the replacement, modification, and appearance of the subdivision, which includes requiring preapproval of plans to replace a fence. *See* TEX. PROP. CODE § 204.010(a)(6).

Flores also argues that unlike the deed restrictions, the Policy Regarding Maintenance does not contain a provision deeming approval of a fence if Inverness fails to timely act on a request for preapproval. The deed restrictions require preapproval of a building. They further provide that if Inverness does not act on a preapproval request within thirty days after the owner submits the building plans or if Inverness has not filed a suit for an injunction before the building is completed, then the plan is deemed approved. Flores asserts that Inverness did not act on the submission of her fence plan within thirty days or seek to enjoin it before its completion, so therefore the fence was deemed approved.

But Flores provides no analysis establishing that the preapproval requirement for buildings applies to her fence. The preapproval provision applies only to a "building," which does not include a fence. *See Building*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "building" to include "[a] structure with walls and a roof, esp. a permanent structure"). The deed restrictions contain separate

provisions concerning fences, and those provisions do not contain a preapproval requirement.

The Policy Regarding Maintenance, on the other hand, applies to "any and all alterations proposed to the lot and/or residence," which is broad enough to include a fence. The policy requires that proposed alterations be submitted for approval. But the policy does not contain any provision deeming approval based on Inverness's failure to act. Nothing in the deed restrictions requires such a provision. We therefore disagree with Flores that her fence was deemed approved or that the provision from the deed restrictions concerning buildings applied to Flores's fence.

Flores next asserts that the policy prevented the "free use of her property" and could be extended to "require approval of improvements . . . that are not in public view." "[C]ovenants restricting the free use of property are not favored . . . because the right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess." *EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 715 S.W.3d 689, 695 (Tex. 2025). But restrictive covenants can also benefit a property owner: "The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots." *Tarr*, 556 S.W.3d at 279–80 (quotation omitted). Courts treat unambiguous covenants as valid contracts binding on the individual property

owners. *Id.* at 280. Because restrictive covenants are designed to restrict the free use of property, we disagree that the policy is invalid merely because it also does so.

We are also unpersuaded by Flores's argument that the policy "grossly expands [Inverness's] authority to require approval of improvements (i.e. a new firepit in the backyard, a new wall color in the bathroom, a new light bulb, and etc.) that are not in public view, which clearly was not the intent of the original parties."[5] The policy primarily concerns exterior areas of the property that are in public view, such as painting structures, parking areas, and landscaping around sidewalks, driveways, and curbs. True, the policy also requires preapproval for "any and all alterations proposed to the lot and/or residence," but even this requirement includes examples such as "painting" and "landscaping (including tree removal)." The policy concludes, "The failure of an owner to maintain the *exterior* of a residence and lot in compliance with this Policy" is a violation of the deed restrictions. (Emphasis added.) We are not persuaded that the policy reasonably could be interpreted to

---

5    Flores argues that a settlement agreement between Inverness and another property owner shows that Inverness has "denied a neighbor's request to place a bird bath and a sitting bench in their front lawn." But the settlement agreement does not mention a bird bath. It did mention "the current bench and chair that are in the front/side yard," but it states that Inverness does not consider these items as "violations of the existing deed restrictions." This evidence does not rise to more than a scintilla of evidence that Inverness enforces the deed restrictions or any policy to extend to areas outside of public view, such as the backyard or interior of a home. *See* TEX. R. CIV. P. 166a(i) (stating that trial court "must grant" no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact").

require preapproval for changing an interior wall color or a light bulb or installing a fire pit in the backyard. *See* TEX. PROP. CODE § 202.004(a) (providing that homeowners association's exercise of discretionary authority is presumed reasonable unless court determines by preponderance of evidence that exercise was arbitrary, capricious, or discriminatory).

Finally, Flores argues that her neighbor built the fence, and Inverness admitted that it cannot enforce a restriction against Flores for an action she did not perform. But neither the deed restrictions nor the Policy Regarding Maintenance conditions compliance based on who performed the act. The policy requires preapproval for "any and all alterations proposed *to the lot and/or residence*." (Emphasis added.) It further states that "[t]he failure of *an owner* to maintain the exterior of a residence and lot in compliance with this Policy" is a violation of the deed restrictions. (Emphasis added.) The deed restrictions apply to the condition or appearance of the property itself, not the person responsible for the condition or appearance. We cannot add language to the challenged policy limiting it to alterations that the owner paid for as Flores asks us to do. *See Tarr*, 556 S.W.3d at 280 (stating that words in covenant may not be enlarged, extended, stretched, or changed by construction) (quotation omitted).

Moreover, Flores's reliance on Inverness's admission does not defeat the unambiguous terms of the written instrument. *See id.* (stating that mere disagreement

21

over interpretation of covenant does not render it ambiguous). Even if Inverness admitted that Flores could not violate a restriction unless she performed the act resulting in the violation, this admission does not render the plain language of the policy ambiguous. *See Meyerland Cmty. Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("[I]t is improper to consider testimony of the parties about what they intended the contractual language to mean, unless the contract is found to be ambiguous."). Flores does not dispute that the new fence is on her property, and the policy and deed restrictions are not susceptible to a construction requiring compliance only by a person who performed an act that violates the restriction.

We construe restrictive covenants liberally to give effect to their purposes and intent. TEX. PROP. CODE § 202.003(a). The summary judgment evidence does not raise a fact issue on whether Inverness had discretion to adopt and enforce the Policy Regarding Maintenance concerning her new fence or whether its actions were arbitrary, capricious, or discriminatory, and therefore she has not overcome the presumption of reasonableness. *See id.* § 202.004(a).

### 2. Violations for storing the barbecue grill and "unsightly items" in view of the community

Next, Flores contends that Inverness improperly enforced the deed restrictions when it sent her notices that storing her barbecue grill and unsightly items in public view violated the deed restrictions. She first complains about notices requesting that

22

she "remove and store the BBQ Grill out of view of the community," which violated Article 16.A. of the deed restrictions. In relevant part, that article provides:

> 16.  A.  Each owner of an interest in a lot shall at all times maintain, replace or repair the exterior of any structure on said lot, as well as any fences, driveways or other improvements consistent with its original appearance in a clean, safe and sightly condition, including, but not limited to, replacing rotted wood, peeling paint, broken items, replacement or removal of dead trees, and similar upkeep. . . . The parties hereto agree that in any enforcement action, all parties shall stipulate that this provision shall be construed liberally to effect its purpose of maintaining a first-class neighborhood.

This provision concerns "any structure" on the property, including fences, driveways, and other improvements. Even when "construed liberally to effect its purpose of maintaining a first-class neighborhood," it is difficult to construe "any structure" as including a barbecue grill.

But a separate article does apply to a barbecue grill. Article 8 provides: "No noxious or offensive trade, activity or noise shall be carried on or permitted upon any lot, nor anything be done thereon which may be or become an annoyance or nuisance to the neighborhood." Photographs attached to the notices show a large barbecue pit next to the driveway in the front area of the property. Inverness reasonably could have determined that storing the barbecue grill in this location was or "may become an annoyance . . . to the neighborhood." Although the notices concerning storage of the barbecue grill did not cite Article 8, Inverness acted within

23

its discretion when it requested that Flores remove the barbecue grill and store it out of view of the community. *See id.*

Second, Flores complains about notices requesting that she "remove unsightly items from public view," which is a violation of Article 8. The "unsightly items" are not described in the notices or by the parties on appeal. But as previously discussed, Article 8 prohibits owners from doing "anything" on their property "which may be or become an annoyance or nuisance to the neighborhood." On the record before us, Inverness had discretion to determine that unsightly items were or might become an annoyance to the neighborhood. *See id.*

### 3. Elements of breach and wrongful act

Because we disagree with Flores's interpretation of the deed restrictions and the policy, we cannot conclude that the trial court erred by granting summary judgment in Inverness's favor on the claims for breach of contract, breach of deed restrictions, and injunctive relief.

The breach of contract and breach of deed restrictions claims are substantively identical. Flores concedes these claims are "synonymous," and her live petition identifies the parties' contract only as one "in the form of the deed restrictions and its amendments[.]" *See JBrice Holdings*, 644 S.W.3d at 183 ("Restrictive covenants are contracts that run with the land."). Both claims are premised on Flores's allegations that Inverness, acting through its board, "violated the restrictive

covenants (contract) when adopting and enforcing certain articles of incorporation, bylaws, resolutions, rules, policies, and guidelines that took Sandra Flores's intangible rights to use her property."

As alleged, both claims require proof that Inverness failed to perform under the deed restrictions. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (listing breach of contract elements, including that "the defendant breached the contract by failing to perform or tender performance as contractually required"); *S-G Owners Ass'n, Inc. v. Sifuentes*, 562 S.W.3d 614, 621 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (stating that to recover compensatory damages for unpaid assessments and fees, homeowners association had burden at trial to prove breach of deed restrictions and amount of damages).

Inverness moved for summary judgment on these two claims in part by arguing that Flores had no evidence of the breach elements of the claims. *See* TEX. R. CIV. P. 166a(i). We have already concluded that no evidence raised a fact issue concerning whether Inverness improperly adopted or enforced the deed restrictions and the policy, a contention which underlies the substantive claims. Accordingly, the trial court did not err by granting Inverness's motion on the breach of contract and breach of deed restrictions claims on no-evidence grounds. *See id.* ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). It necessarily follows that Flores has not

conclusively established a breach by Inverness as required to meet her own summary judgment burden on these two claims. *See* TEX. R. CIV. P. 166a(c) (providing that summary judgment "shall be rendered forthwith" if summary judgment evidence shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law" on issues contained in motion, answer, or any other response); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law."). Therefore, the trial court properly rendered summary judgment in Inverness's favor on the breach of contract and breach of deed restrictions claims.

Concerning injunctive relief, Flores sought an injunction in the form of "an order of specific performance" requiring Inverness to "rescind[] all rules, resolutions, policies, and guidelines that conflict with the legally adopted deed restrictions"; "record with Harris County [Inverness's] document" showing the recission; and "remove all fines and attorney fees from her account." A claim for injunctive relief requires proof of the existence of a wrongful act. *See Dao v. Mission Bend Homeowners Ass'n*, 667 S.W.3d 304, 317 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (listing elements required to obtain injunctive relief, including existence of wrongful act).

Inverness moved for summary judgment in part by arguing that Flores had no evidence that it acted wrongfully. *See id.* We have already concluded that no evidence raises a fact issue on whether Inverness improperly adopted or enforced any restriction or policy. Therefore, the trial court did not err by granting Inverness's no-evidence motion on the claim for injunctive relief. *See* TEX. R. CIV. P. 166a(i). And because Flores did not conclusively establish a wrongful act, the trial court properly denied her motion on the injunction claim. *See* TEX. R. CIV. P. 166a(c); *Anglo-Dutch Petroleum*, 193 S.W.3d at 95.

We conclude that the trial court did not err by granting summary judgment in Inverness's favor on the claims for breach of contract, breach of deed restrictions, and injunctive relief.

## D. Conversion

Flores's conversion claim alleged that Inverness improperly adopted and enforced the restrictions, which constituted a conversion of her intangible right "to use her property." The parties dispute whether this claim is cognizable.

Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Bell v. Bay Area RV Parks, L.L.C.*, 722 S.W.3d 176, 211 (Tex. App.—Houston [1st Dist.] 2025, no pet.). To recover on a claim for conversion, the plaintiff must establish that (1) it owned or had possession of the

27

property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Id.* The plaintiff must also prove damages that are the proximate result of the defendant's conversion. *Id.* The measure of damages is typically the fair market value of the property at the time and place of the conversion. *Id.*

The threshold question concerning this claim—and the question which the parties dispute—is whether Flores's intangible right to use her real property is the kind of property that can be converted. Flores acknowledges that real property is not subject to a conversion claim, but she contends that intangible rights related to a contract or deed restrictions can be converted even when the contract relates to real property. *See Brewer & Pritchard, P.C. v. AMKO Res. Int'l, Inc.*, No. 14-13-00113-CV, 2014 WL 3512836, at *9 n.9 (Tex. App.—Houston [14th Dist.] July 15, 2024, no pet.) (mem. op.) (quotation omitted). She further contends that Inverness converted her intangible right to use her real property by improperly adopting and enforcing the restrictions, this intangible right "was merged into a document," and Inverness "converted contractual rights by changing the terms of the contract."

Generally, a plaintiff may only maintain a conversion action for tangible personal property. *Bell*, 722 S.W.3d at 211. But courts have recognized an exception

28

to this general rule—the "merger exception"—when an underlying intangible right has been merged into a physical document and that document has been converted. *Id.*; *see also Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) (per curiam) ("The conversion of the document in which the rights had been merged supports a conversion action for the value of the rights represented by it."); *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.) ("Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."). Texas courts have used the "merger exception" to recognize conversion claims for intangible property concerning lease documents, confidential customer lists, and shares of stock. *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Flores acknowledges that the merger exception has been applied only to a few types of intangible property, but she argues that the list is not exclusive. She relies on an 1860 Texas Supreme Court opinion to assert that a conversion action lies for rights pertaining to real property. *See Nelson v. King*, 25 Tex. 655, 664 (1860) (holding that land scrip "is treated in law as a chattel, and, unlike an ordinary title deed, it has a market value, like other chattels," and plaintiff therefore had action for conversion of land scrip "and to sue for its value"). We are not persuaded that

29

Flores's asserted right to use her real property is analogous to a land scrip. *See Land Scrip*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "land scrip" as: (1) "A negotiable instrument entitling the holder, usu. a person or company engaged in public service, to possess specified areas of public land"; and (2) "A certificate given to someone who purchases public land stating that the purchase price has been duly paid"). Nevertheless, we need not resolve this dispute because a more fundamental problem exists with Flores's argument: she has not established that Inverness converted a document containing her asserted intangible right.

The merger exception applies when an underlying intangible right has been merged into a physical document and that document has been converted. *Bell*, 722 S.W.3d at 211. Flores's briefing inconsistently identifies the converted property as real property, the intangible right to use the property, and the "intangible rights of restrictive covenants." She also asserts that "the intangible right was merged into a document" and Inverness "converted contractual rights by changing the terms of the contract." But Flores does not identify a specific document that Inverness allegedly converted.

To the extent she asserts that the right merged into the deed restrictions or the challenged policy, there is no evidence Inverness could or did convert these actual documents. Moreover, these documents did not grant Flores any right to use her property; rather, they restricted or removed certain rights to use her property. So the

30

right she relies on could not have merged into those documents. The right to use her property might have merged into the deed when she purchased her home, but there is no allegation that Inverness converted her deed or that by doing so Inverness could assume and exercise dominion and control over her property to the exclusion of, or inconsistent with, her rights. *See id.*

We hold that Flores has not established that her claim for conversion of the intangible right to use her property is cognizable. Therefore, the trial court did not err by granting Inverness's summary judgment motion and denying Flores's summary judgment motion on the conversion claim.

We overrule Flores's issues.

## Conclusion

We affirm the trial court's judgment.

David Gunn
Justice

Panel consists of Justices Gunn, Caughey, and Morgan.